Janis **ZALCMANIS**, Gertrude Jansons, Lorena Jansons, Asja Vivna Jansons, n/k/a Asja Liders and the Public Administrator of the County of New York, State of New York, Administrator of the Estate of Karlis Jansons, Deceased,

v.

The **UNITED STATES.**

No. 250–56.

United States Court of Claims.
March 6, 1957.

Robert H. Law, III, White Plains, N. Y., for plaintiffs. Robert H. Law, Jr., White Plains, N. Y., was on the briefs.

George Willi, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew F. Oehmann, Washington, D. C., was on the brief.

Joseph T. Arenson, New York City, for Public Administrator of the County of New York, State of New York.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This suit is brought by alien residents of the United States to recover interest on a refund of tax, penalties, and deficiency interest made by the Commissioner of Internal Revenue nine years after payment but without the payment of interest thereon for the time the money was illegally held.

Plaintiffs,[1] citizens of the Republic of Latvia and owners of the Latvian steamships Abgora and Ciltvaira, were residents of that country when it was taken over by Soviet Russia in June 1940. Nationalization laws were immediately enacted by Russia but at that time the steamships were in the western hemisphere and thus not subject to Soviet control. In a libel action by instrumentalities of the Soviet Government to recover the steamships based on the fact that the Soviet Government had nationalized all private property, two trustees, viz., Charles Recht and Joseph G. Kearns, were appointed to operate the vessels in order to keep the vessels on the high seas in the cause of the United States pending final disposition of the aforementioned suit.

Both vessels were sunk in 1942 and the trustees collected the insurance moneys thereon. The trustees also held the moneys collected from the operation of the vessels up until the date of their sinking. On August 6, 1943, the Alien Property Custodian by Vesting Order No. 1941, and pursuant to the Trading with the Enemy Act, 40 Stat. 411, as amended, 50 U.S.C.App. § 1 (1952 Ed.), et seq., 50 U.S.C.A.Appendix, § 1 et seq., vested plaintiffs' property held by the trustees, i. e., all of the moneys held by them, a total of $837,225.51. Taxes, penalties, and interest against these sums were assessed and paid by the trustees on March 15, 1946, pursuant to a court order and over the protests of the Latvian Minister to the United States

---

1. The plaintiffs in this suit include the Public Administrator of the County of New York, State of New York, who is administrator of the Estate of Karlis Jansons, deceased, one of the former owners of the steamships in question. For the sake of brevity, the term plaintiffs will be used and intended to include all parties concerned both before and after the death of Karlis Jansons.

and the plaintiffs in this suit. The trustees immediately filed a claim for refund with the Commissioner of Internal Revenue, and on April 8, 1955, the entire amount assessed was refunded without interest to the Alien Property Custodian. All of plaintiffs' property was returned to them by the Alien Property Custodian on June 20, 1955. Plaintiffs, therefore, seek interest at the rate of six percent per annum on $398,469.66, from March 15, 1946, until June 20, 1955, the date of the ultimate payment to them by the Alien Property Custodian.

The defendant has moved for a dismissal on the ground that the court is without jurisdiction in light of 28 U.S. C. § 2502, which reads as follows:

"*Aliens' privilege to sue*

"Citizens or subjects of any foreign government which accords to citizens of the United States the right to prosecute claims against their government in its courts may sue the United States in the Court of Claims if the subject matter of the suit is *otherwise within such court's jurisdiction.*"

Defendant points out that according to this statute a condition precedent to this court's jurisdiction in a suit by an alien against the United States is a showing that the alien's government is amenable to suit against it in its courts by United States citizens and that the plaintiffs here made no showing of the judicial reciprocity required by the statute.

Subsequent to the filing of its motion to dismiss by the defendant, the plaintiffs in a motion to amend their petition affirmatively alleged that there existed between the United States and the Republic of Latvia a treaty[2] executed in 1928 which opened the courts of that country to citizens of this country with the following language:

"The nationals of each High Contracting Party shall enjoy freedom of access to the courts of justice of the other on conforming to the local laws, as well for the prosecution as for the defense of their rights, and in all degrees of jurisdiction established by law."

The requested amended petition also contained the allegation that there is reciprocity between the United States and Latvia with reference to the prosecution of claims by citizens of each as against the government of the other. Plaintiffs indicated that they intended to prove both of these allegations by expert testimony.

Through some administrative oversight, the plaintiffs' motion to amend their petition was not acted upon. We now grant the motion and will consider the defendant's motion to dismiss in light of the amended petition.

Defendant, however, replied to plaintiffs' motion to amend and argued that plaintiffs failed to allege that at the time of the commencement of this proceeding a citizen of the United States could sue the Government of Latvia in a court of that country and that, in any event, there are no operative courts within the framework of the Government of the Republic of Latvia[3] and that plaintiffs have alleged no facts to the contrary, therefore, the court is without jurisdiction despite the amended petition.

Notwithstanding defendant's assertion that there are no courts existing within the framework of the Republic of Latvia, the court feels that it must

2. Treaty of Friendship, Commerce and Consular Rights Between the United States of America and the Republic of Latvia, April 20, 1928, 45 Stat. 2641.

3. There is a distinction to be drawn here between the Republic of Latvia and Soviet Latvia. Plaintiffs claim to be citizens of the Republic of Latvia which, except for its diplomatic officers interspersed throughout the world, ceased to

exist when Soviet Russia overran that country in 1940. Plaintiffs claim that this is the only Latvia recognized by the political departments of the United States and that the United States still maintains full diplomatic relationship with the Republic of Latvia. They point out that Soviet Latvia, which has controlled geographical Latvia since 1940, has never been, and still is not recognized by the United States.

## 172

deny defendant's motion at this time without prejudice.

Plaintiffs made an express allegation that "[t]here is reciprocity between the United States and Latvia with reference to the prosecution of claims by citizens of each as against the Government of the other." Whether this is so is a question of fact to be proven by plaintiffs.

Plaintiffs' motion to amend their petition is granted, and defendant's motion to dismiss is denied without prejudice. The case is, therefore, returned to the Commissioner of the court for further proceedings.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.