Janis ZALCMANIS, Gertrude Jansons, Lorena Jansons, Asja Viviana Jansons, n/k/a Asja Liders and the Public Administrator of the County of New York, State of New York, Administrator of the Estate of Karlis Jansons, Deceased

v.

UNITED STATES.

No. 250–56.

United States Court of Claims.

June 3, 1959.

Robert H. Law, III, White Plains, N. Y., Robert H. Law, Jr., White Plains, N. Y., on the briefs, for plaintiffs.

Theodore D. Peyser, Jr., Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., James P. Garland, and Lyle M. Turner, Washington, D. C., on the brief, for defendant.

LARAMORE, Judge.

Plaintiffs, alien residents of the United States, sue to recover interest on a refund of tax and interest made by the Commissioner of Internal Revenue to the Attorney General as successor to the Alien Property Custodian.

A previous motion for summary judgment by defendant was denied without prejudice and plaintiffs were permitted to amend their petition to allege facts sufficient to allow them to bring suit against the United States under 28 U.S. C. § 2502. See Zalcmanis v. United States, 149 F.Supp. 169, 137 Ct.Cl. 543.

The pertinent facts are sufficiently set forth in the body of this opinion.

The first question presented is whether plaintiffs now have alleged and proved a right to sue in the Court of Claims under 28 U.S.C. § 2502. Section 2502 reads as follows:

> "Citizens or subjects of any foreign government which accords to citizens of the United States the right to prosecute claims against their government in its courts may sue the United States in the Court of Claims if the subject matter of the suit is otherwise within such court's jurisdiction."

We think this question can only be answered in the affirmative. Plain-

tiffs were and are citizens of the Republic of Latvia. The overrunning of Latvia and the resulting incorporation of the country into the Union of Soviet Socialist Republics did not take from them their citizenship in the Republic of Latvia. In fact, the Republic of Latvia as it was constituted before the invasion by the Union of Soviet Socialist Republics is still recognized by the United States, and the treaty [1] between the United States and Latvia, permitting United States citizens free access to Latvian courts is still in full force and effect. However, there are in fact no courts maintained by the government in exile and all claims must be administratively determined. This situation exists through no fault of the plaintiffs. We think it would be a harsh construction of section 2502, *supra*, to say that this takes from plaintiffs the right to sue in the Court of Claims. To do so would be to deny the continued existence of the treaty previously referred to when in fact our Government has seen fit to recognize said treaty as a continuing international agreement between the Republic of Latvia and the United States. Until such time as the United States recognizes Latvia as it is constituted today, and no longer adheres to the treaty between the two governments, plaintiffs continue to enjoy the freedom of this court.

This brings us the question of plaintiffs' right to recover interest on the refund of taxes.

The taxes here in question were paid by trustees, pursuant to an order of the District Court, Southern District of New York, at a time in which all property of plaintiffs was vested pursuant to the Trading With the Enemy Act, *infra*, in the Alien Property Custodian. The District Court's order was because of plaintiffs' ownership of two vessels which were libeled by Soviet Russia in connection with the nationalization of all private Latvian property. The trustees had been appointed to operate the ves-

sels pending final determination of the libel action. Subsequently both vessels were sunk by enemy action and thereafter insurance moneys were collected on said vessels and held by the trustees as funds obtained from the operation of the vessels. At the time the taxes were paid the insurance moneys were still in the hands of the trustees.

Under section 36(a) of the Trading With the Enemy Act, 50 U.S.C.A.Appendix, § 36(a), the vesting in the Alien Property Custodian did not render inapplicable Federal tax liability for a period prior to the date of the vesting. Accordingly, the District Court ordered and the trustees paid an assessed deficiency for taxes claimed by the Commissioner of Internal Revenue to be due for the years 1940, 1941, and 1942. The court further ordered that the trustees file claims for refund and take necessary steps to prosecute said claims in the United States District Court.

On June 29, 1946, the District Court ordered the trustees to turn over all funds held by them to the Alien Property Custodian in consequence of the 1943 vesting order. The court determined that the Alien Property Custodian had acquired all right, title, interest and claim in and to said property. The court further ordered that the direction to the trustees to file claims for refund be stricken and ordered the Alien Property Custodian to take necessary steps to prosecute the claims for refund. Thus the plaintiffs and the trustees no longer had any rights or interest in the processing of claims for refund. Consequently, the only person having such a right to process claims for refund was the Alien Property Custodian. On July 13, 1948, the Attorney General of the United States, successor to the Alien Property Custodian, filed claims for refund for taxes paid out of property vested pursuant to Vesting Order No. 1941.

Prior to filing claims by the Attorney General, plaintiffs filed similar claims for refund, apparently as a protective meas-

---

1. Treaty between the United States and Latvia, Treaty Series, No. 765, 45 Stat. 2641.

ure. However, at this time plaintiffs had no right or interest in the tax money held by the Commissioner of Internal Revenue.

On May 20, 1952, the Attorney General paid the sum of $89,110.62 to plaintiff Janis Zalcmanis and a similar sum to plaintiff Public Administrator. This action constituted a partial divesting but did not include any right to, or interest in, the claims for refund.

In 1955 it was administratively determined that the taxes paid in 1946 had been erroneously collected. Hence refund was made to the Attorney General, who on June 20, 1954, by Return Order No. 2420, paid plaintiffs the sum of $398,140.32, without interest.

It is plaintiffs' contention that they are entitled under section 3771 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3771, to interest on the $398,140.32 from date of payment to date of refund. We think this contention is without merit because the situation falls within the provisions of the Trading With the Enemy Act.

Section 36(c) of the Trading With the Enemy Act, *supra,* provides in part:

 " * * * Statutes of limitations on assessment, collection, refund, or credit of Federal taxes shall be suspended, with respect to any vested property or interest, or the earnings, increment or proceeds thereof, while vested and for six months thereafter; but no interest shall be paid upon any refund with respect to any period during which the statute of limitations is so suspended."

 Under the above-quoted section interest on a refund of taxes cannot be paid during the period of a suspension of the statute of limitations. The act specifically provides that such suspension shall be in effect while property is vested and for six months thereafter.

The money represented by the tax refund was vested in 1943 and divested and paid to plaintiffs in June of 1955. Under the clear terms of the act no interest would be payable until six months after the divesting.

Since payment under the divesting order was made during the statutory period of the suspension of the statute of limitations, plaintiffs are not entitled to interest as claimed.

Plaintiffs argue that neither the original sum of $597,687.49 paid for taxes, nor the claims for refund should have been vested. A full answer to this contention is that there was a vesting order which could only be set aside by the District Court. Sections 7(c), par. 4, and 9(a) of the Trading With the Enemy Act, *supra,* 50 U.S.C.A.Appendix, §§ 7 (c), par. 4, 9(a).

No such determination was ever made by a District Court. For the above reasons plaintiffs' petition must be dismissed.

It is so ordered.

BRYAN, District Judge, sitting by designation, JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.