Bobby **BAGWELL**, et al., Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 439–87L.

United States Claims Court.

Nov. 2, 1990.

Daniel E. McMahan, Altus, Okl., atty. of record for plaintiffs.

David F. Shuey, Land & Natural Resources, Dept. of Justice, Washington, D.C., atty. of record for defendant, Celia I. Mohn, Land & Natural Resources, Dept. of Justice, Washington, D.C., of counsel.

## OPINION

HORN, Judge.

Plaintiffs, Bobby Bagwell, Lura Beth Clark, Robert Clark, and Mike Goodner, adjacent landowners in Tillman County, Oklahoma, seek to bring this action under the Tucker Act, 28 U.S.C. § 1491 (1988), for an alleged taking of a flowage easement on their land. Plaintiffs assert that they have at all relevant times planted and harvested crops and/or raised livestock on the tracts of land at issue. Plaintiffs further assert that as a result of the reduced drainage capacity of Otter Creek, caused by the release of water from the Lake Altus and Mountain Park Dams by the Army Corps of Engineers (hereinafter, the Corps), plaintiffs' lands have been damaged, and they are no longer able to support their livestock or farming activities.

After a thorough review of defendant's Motion to Dismiss and the subsequent filings submitted by the parties, and after considering the issues raised by the parties at oral argument, this court concludes that, at this time, defendant has not proven adequately that each of plaintiffs' claims are beyond the jurisdiction of this court or time barred by the statute of limitations set out in 28 U.S.C. § 2401 (1988). Defendant's Motion to Dismiss is, therefore, DENIED, without prejudice.

## FACTS

Plaintiffs' first cause of action alleges that in May 1977, during a period of heavy rainfall, the Corps made unnecessarily large releases of water through the Lake Altus Dam on the North Fork of the Red River. Plaintiffs claim that these actions were based on insufficient data, and that the releases by the Corps caused the North Fork of the Red River to break through the natural levee that had separated it from one of its tributaries, Otter Creek, some 20 miles downstream from the dam. As a result of the destruction of this natural levee, the North Fork abandoned its own channel and merged with Otter Creek. According to plaintiffs, this merger of the two streams diminished the drainage capacity of Otter Creek and resulted in the creek's frequent overflow onto their property. In addition, plaintiffs claim that this reduced drainage capacity also caused water to seep under their land, rendering it unable to support livestock or the farm machinery necessary to farm much of their land.

Plaintiffs' second cause of action alleges that the design of another dam, the Mountain Park Dam, which is situated approximately 20 miles upstream on Otter Creek from its confluence with the North Fork of the Red River, was based on an inaccurate estimate of Otter Creek's flowage capacity at the time the Mountain Park Dam was designed and built. Plaintiffs allege that Otter Creek's drainage capacity has been diminished further since its merger with the North Fork in 1977 as a result of the Corps' action at the Lake Altus Dam. Plaintiffs also claim that releases of water made from the Mountain Park Dam during the last six months of 1986, due to heavy rainfall in the Otter Creek watershed, exceeded the channel capacity of Otter Creek and caused additional flooding of plaintiffs' property, and additional water seepage underneath plaintiffs' property. According to plaintiffs, the flooding and the seepage further rendered their land incapable of supporting livestock or farm machinery.

Prior to bringing this action, plaintiffs Lura Beth and Robert Clark were involved

in state and federal court proceedings, factually related to the present action. On July 23, 1987, plaintiffs filed this action in the United States Claims Court, alleging that as a result of the operation by the Corps of the Lake Altus Dam's flood control gates in May of 1977 and the mistaken design capabilities of the Mountain Park Dam, plaintiffs' lands are now unable to support livestock or the farm machinery necessary to farm much of their lands. Therefore, plaintiffs claim that defendant's actions constitute a taking under the Fifth Amendment to the Constitution of a flowage easement across plaintiffs' lands, for which plaintiffs claim damages as follows:

| PLAINTIFFS | FIRST CAUSE | SECOND CAUSE | TOTAL |
|---|---|---|---|
| Robert & Lura Beth Clark | $5,000,000 | $2,500,000 | $ 7,500,000 |
| Bobby Bagwell & Mike Goodner | $3,000,000 | $1,500,000 | $ 4,500,000 |
| TOTAL | $8,000,000 | $4,000,000 | $12,000,000 |

Plaintiffs also claim reasonable attorney's fees, costs and interest.

On April 4, 1988, defendant filed a Motion to Dismiss the case in this court for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Claims Court (RUSCC). Defendant asserts that even if plaintiffs' claims are true, such claims sound in tort, and fall outside the jurisdiction of this court. In the alternative, defendant contends that plaintiffs' claims are time barred by the statute of limitations for claims against the government, set out in 28 U.S.C. § 2401 (1988). On January 1, 1989, plaintiffs filed their Objection to Defendant's Motion to Dismiss, to which defendant responded, and an oral argument was held on July 3, 1990.

On August 1, 1990, plaintiffs filed a Supplemental Objection to the Introduction of Evidence contained in defendant's Motion to Dismiss. Plaintiffs object to defendant's inclusion, as evidence, a letter which appears to have been sent from an officer of the Army Corps of Engineers to plaintiff Robert Clark and purports to indicate that officer's opinion of how likely it was that flooding of Mr. Clark's land would recur. Plaintiffs object to the inclusion of this letter on the grounds that it does not meet the requirements for the submission of factual matters under the Rules of United States Claims Court and Appendix H(1) thereto, namely, that it is not supported by an affidavit, a transcript of a deposition or of trial testimony, the testimony of a witness who appeared at the hearing on the motion or any of the other submissions referred to in RUSCC 56(c), including answers to interrogatories, admissions on file, or any other evidence which would be admissible at trial.

## DISCUSSION

### I. Jurisdiction

When deciding a motion to dismiss, which is based on a challenge to the jurisdiction of the court, the court must reach its decision based on the evidence presented to it by the parties. The criteria for deciding a motion to dismiss are clearly different than those utilized by a judge following a trial, after which the fact finder has the benefit of evidence presented through the use of witnesses and authenticated documents. The criteria are also different than when resolving a motion for summary judgment, supported by sworn affidavits and authenticated documents. The judge's dilemma when deciding a motion to dismiss in a complicated case, such as the case at issue, often is to sift through the allegations in the complaint and the assertions in defendant's Motion to Dis-

miss, which in this case is unaccompanied by authenticating documentation. The Supreme Court has clearly articulated, and the United States Court of Appeals for the Federal Circuit has explicitly adopted, a standard for how courts should weigh evidence presented in a complaint when deciding a motion to dismiss, as follows:

> Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989).

The Court of Appeals for the Federal Circuit has indicated that if a motion to dismiss for lack of subject matter jurisdiction brings a challenge to the truth of the jurisdictional facts alleged in the complaint, the trial court may also consider relevant evidence in order to resolve disputed facts. *Reynolds v. Army & Air Force Exchange,* 846 F.2d 746, 747 (Fed.Cir.1988).

When it filed its Motion to Dismiss, defendant attached to its assertion of facts and legal argument a copy of an unsigned letter to plaintiff Robert Clark, dated January 30, 1981, apparently intended for the signature of Weldon M. Gamel, Chief, Engineering Division. In all probability, the Engineering Division referred to in the letter is that of the Corps, but the copy of the letter attached to defendant's Motion to Dismiss is on blank paper, not on letterhead. Moreover, no affidavits accompanied defendant's Motion to Dismiss. Similarly, no affidavits accompanied Defendant's Reply to Plaintiff's Objection to Defendant's Motion to Dismiss, to which were attached three exhibits: a letter dated June 7, 1977 from plaintiff Robert Clark to the District Engineer of the Corps, Tulsa District; a letter dated June 29, 1977, from Weldon M. Gamel, Chief, Engineering Division, again unsigned, and again on blank paper, not on letterhead, but probably from the Corps; and a letter dated February 12, 1987, from plaintiff, Robert Clark, to the Honorable Don Nickles, United States Senate.

Although according to case law, the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence, *Reynolds v. Army & Air Force Exchange,* 846 F.2d at 748, a complaint should not be dismissed "unless it is beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Hamlet v. United States,* 873 F.2d at 1416 (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)).

■ Accompanying, and in support of their Objection to Defendant's Motion to Dismiss, plaintiffs have submitted the signed and notarized affidavit of plaintiff Robert Clark, as well as numerous other exhibits, copies of correspondence, reports on the North Fork of the Red River and copies of pleadings and decisions in prior, related, legal proceedings in state and federal courts. In the absence of affidavits to the contrary (which in this case defendant chose not to submit in support of its Motion to Dismiss, or with its Reply to Plaintiffs' Objection to Defendant's Motion to Dismiss), the court may accept as true, for the purposes of deciding the Motion to Dismiss, the undisputed factual evidence included in the affidavit signed by Robert Clark, submitted by plaintiffs in support of Plaintiffs' Objection to Defendant's Motion to Dismiss. *See Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), *Singleton v. United States,* 6 Cl.Ct. 156, 167 (1984).

■ Plaintiffs' lawsuit is based on the theory that under the Takings Clause of the Fifth Amendment to the Constitution, they are entitled to compensation because their land has been rendered unusable for its intended purposes by acts of government officials when they released water from the two separate dams: the Lake Altus and the Mountain Park Dams. According to case law, "To constitute a taking, the overflow ... or seepage ... must have been the direct, natural or probable result of an authorized activity, and not the

incidental or consequential injury inflicted by the action." *Columbia Basin Orchard v. United States*, 132 F.Supp. 707, 709, 132 Ct.Cl. 445, 450 (1955); *see also Barnes v. United States*, 538 F.2d 865, 210 Ct.Cl. 467 (1976). In order for the government's action to constitute a taking, the damage to plaintiffs' property must have been the product of an intermittent but frequently and inevitably recurring invasion of water, which is the result of authorized action by government officials, and productive of substantial damage. *Barnes v. United States*, 538 F.2d at 870, 210 Ct.Cl. at 474 (other citations omitted). The flooding must be a natural and probable consequence of that governmental act, *Richard v. United States*, 282 F.2d 901, 904, 152 Ct.Cl. 225, 230 (1960). Plaintiffs, however, need not prove that the government necessarily intended to take the property. *Barnes v. United States*, 538 F.2d at 871, 210 Ct.Cl. at 476. In the instant case, although the parties agree that the Corps released water from both dams, they do not agree on whether or not the flooding and subsequent damage were the natural and probable consequences of the actions by the Corps.[1]

Moreover, in its Motion to Dismiss, defendant asserts grounds which are alleged to constitute defenses to plaintiffs' lawsuit. Defendant first asserts that because plaintiffs' claims, as filed, sound in tort, they fall outside the jurisdiction of this court and should be dismissed for lack of subject matter jurisdiction in accordance with United States Claims Court Rule 12(b)(1). Furthermore, defendant contends that plaintiffs' claim involving the operation of the Lake Altus Dam during May 1977 is based "on one specific occasion" which resulted in the flooding of their property. Defendant argues that the damage is merely an incidental or consequential result of the Corps' action during May 1977, for which an action may only lie in tort, and over which this court does not have jurisdiction. Defendant cannot point to anything in the Complaint, as filed, by which plaintiffs allege that a tort has occurred or refer to any specific breach of duty by the Corps, nor have plaintiffs referred to or used the word negligence in their Complaint: Nonetheless, defendant claims that plaintiffs, in fact, have asserted a claim of negligence by alleging that the actions of the Corps were based on insufficient data and resulted in the release of overabundant amounts of water from Lake Altus during May 1977, causing flooding of their lands.

Although a suit for a federal taking lies properly within the jurisdiction of the United States Claims Court, the court has no jurisdiction to entertain tort claims and would have to dismiss such a suit. *See* 28 U.S.C. § 1491 (1988); *Eastport Steamship Corp. v. United States*, 372 F.2d 1002, 178 Ct.Cl. 599 (1967). For example, government induced flooding damage, which is not inevitably recurring, constitutes a tort, not a taking. *Barnes v. United States*, 538 F.2d at 870, 210 Ct.Cl. at 475.

Based on the evidence before the court at the present time, neither plaintiffs nor defendant have provided enough information to the court based upon which the court can conclude whether a taking has taken place or determine whether the actions alleged, in fact, sound in tort. In a case such as the instant one, in which unrefuted facts have been raised in the Complaint, and further supported by the affidavit of plaintiff Robert Clark filed with the court, to indicate that there might have been an unconstitutional taking of any of plaintiffs' property, a dismissal of the action on the pleadings is unwarranted. Defendant's Motion to Dismiss is denied, without prejudice, until enough evidence is presented to resolve the factual disputes at issue or to decide that plaintiffs' claims are without merit. *Griffin v. United States*, 537 F.2d 1130, 1132 (Temp.Emer.Ct.App.1976), *Zalcmanis v. United States*, 149 F.Supp. 169, 137 Ct.Cl. 543 (1957).

Even if the court could conclude at this time, however, that the portion of plaintiffs' Complaint dealing with the flooding allegedly caused by the releases of water

1. These outstanding disputes of fact rule out the option of converting defendant's Motion to Dismiss into a Motion for Summary Judgment, and deciding the case on questions of law.

from the Lake Altus Dam states a claim sounding in tort, and, therefore, is outside this court's jurisdiction, defendant's Motion to Dismiss the above-captioned case must still be denied because it fails to address the second portion of plaintiffs' claim involving the damage caused by the water released by the Corps from the Mountain Park Dam in 1986.

In their Complaint, plaintiffs allege that the releases of water from the Lake Altus Dam in May 1977, and the releases made from the Mountain Park Dam during the last six months of 1986, both contributed to the flooding which resulted in a taking of plaintiffs' land. In defendant's Motion to Dismiss, however, defendant only addresses what it believes to be the tortious nature of plaintiffs' first claim involving the Lake Altus Dam releases. Plaintiffs note this omission in their Objection to Defendant's Motion to Dismiss. Yet, in Defendant's Reply to Plaintiffs' Objection to Defendant's Motion to Dismiss, the government still fails to address plaintiffs' claim involving the Mountain Park Dam water releases. Therefore, even if the court had sufficient information to find the allegations made by defendant in its Motion to Dismiss to be true concerning the Lake Altus Dam, a portion of plaintiffs' Complaint regarding the Mountain Park Dam would still survive and dismissal of plaintiffs' lawsuit would be inappropriate at this time.

## II. Statute of Limitations

Defendant's second assertion in support of its Motion to Dismiss is that even if plaintiffs' claims rise to the level of a taking, they are time barred by the six years statute of limitations which governs claims against the federal government, and is set out in 28 U.S.C. § 2401 (1988).

Defendant cites the *Barnes* case as establishing the test for when a taking has occurred and, therefore, when the statute of limitations should begin to run in a taking case such as the instant one. We agree that the date of taking is the date that it first became clearly apparent by passage of time that the intermittent flooding was of a permanent nature or has become stabilized. See *United States v.*

*Dickinson,* 331 U.S. 745, 749, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947); *Barnes,* 538 F.2d at 873, 210 Ct.Cl. at 480. The test for when the statute of limitations begins to run has been defined as when the damage (1) manifested itself so that it should have been recognized, (2) the circumstances were such that the damage was a foreseeable future event, or (3) that the alleged effects of the dams' actions were fully known to the landowners. *Baskett v. United States,* 8 Cl.Ct. 201, 231 (1985).

Defendant asserts that in the instant case, if a taking has occurred, there are certainly two occasions at which time it should have been clear to plaintiffs that the flooding and damage caused was of a permanent nature for the purposes of a taking. In 1977, when the releases of water from Lake Altus Dam destroyed the natural levee and first flooded plaintiffs' land, defendant claims that plaintiffs became fully aware of the effects of the Corps' action and demonstrated this awareness by communicating their concerns in letters from Robert Clark to the Corps on several occasions. No such letters have been introduced into the record to show a state of mind of any of the other plaintiffs, although paragraphs 5 and 6 of the Complaint, which remains unrefuted at this time, allege that plaintiffs notified the Corps of the facts alleged in the Complaint. Defendant further contends that the permanent nature of the flooding caused by the Lake Altus Dam was or should have been known to plaintiffs as a result of the letter it attached to defendant's Motion to Dismiss, in its unsigned form, from the Corps again to one of the plaintiffs, Robert Clark, dated January 30, 1981. This letter stated that "the increase in stage at the mouth along with Otter Creeks inadequate channel capacity will continue to cause flooding along Otter Creek until measures are taken to solve the problem." Therefore, defendant contends that the latest date from which the statute of limitations should run on the flooding and seepage resulting from the water releases out of the Lake Altus Dam is the date of this correspondence to Robert Clark, January

30, 1981. If such were the case, plaintiffs' Complaint, which was filed July 23, 1987, would indeed be time barred.

Plaintiffs cite a string of cases in which the courts have held that one, two or three floodings by themselves do not constitute a taking. In the affidavit of Robert Clark, plaintiffs present evidence to show that before 1984 the flooding had only occurred three times after periods of average rainfall. The evidence presented by plaintiffs, combined with the unrefuted allegations in the Complaint, at least raises the possibility that the flooding situation had not stabilized prior to 1984, because natural phenomenon, such as extra heavy rainfall, could have accounted for previous flooding. If the taking occurred in 1984, plaintiffs filed their Complaint within the six-year statutory limit.[2]

This court, while accepting the test cited by defendant for deciding when to begin running the six year statute of limitations on a flowage easement takings claim, cannot determine based on the evidence currently before it, when the flooding and resulting damage manifested itself in a stabilized form, so that it should have been clear to plaintiffs that they were of a permanent and recurring nature, and not attributable to natural phenomenon such as heavy rainfall.

The affidavit of plaintiff Robert Clark, stating that the amount of rainfall was only average during several of the years in which plaintiffs experienced flooding, is not enough evidence on which to make a factual determination as to when plaintiffs should have been able to conclude that the flooding was of a permanent and recurring nature, and not caused by natural phenomenon. Likewise, defendant's argument that January 30, 1981, the date of the letter sent by the Corps to plaintiff Robert Clark, is the correct date from which to begin running the statute of limitations may also have merit but is inconclusive at this time. Consequently, absent further factual information, the court is unable to determine an appropriate date on which to begin running the applicable statute of limitations.[3]

The court does note that it is unsympathetic to plaintiffs' suggestion that the statute of limitations should have been tolled while they exhausted all available administrative remedies. This argument is without merit because, as defendant points out in its Reply to Plaintiffs' Objection to Defendant's Motion to Dismiss, and plaintiffs actually admit in their Objection to Defen-

---

2. Plaintiffs claim that they experienced flooding to their land every spring after the release of water from the Lake Altus Dam in November of 1977 broke through the natural levee, causing the merger of the north fork of the Red River with Otter Creek. It appears from the affidavit of plaintiff Robert Clark that the flooding to his land occurred as follows: in 1978 the land was flooded, despite only average rainfall that spring. In 1979 and 1980, the Clarks' land was flooded, but they could not attribute this to the releases of water made from the Lake Altus Dam because releases were made from the Mountain Park Dam in those years, which may have caused the flooding. In 1981 and 1982, the Clarks' land was again flooded, although they only experienced average rainfall and no releases of water were made from the Mountain Park Dam. In 1983, the land was flooded again, but the Clarks also noted heavy rainfall that year and could not attribute the flooding solely to the releases made from the Lake Altus Dam. However, in 1984, the Clarks again experienced flooding after only average rainfall, with no known releases made from the Mountain Park Dam. The year, 1984, the fourth year in which the Clarks experienced flooding without heavy rainfall or releases made from the Mountain Park Dam (including 1978, 1981, and 1982), is the year that plaintiffs assert their taking claim first became ripe. While this is the type of analysis that the court may eventually use to determine the proper date from which to run the statute of limitations, this information, on its own, is insufficient for the court to issue a ruling regarding all the plaintiffs, because it is derived from the affidavit of only one of the four plaintiffs and only discusses the flooding of one of the three parcels of land involved in this claim.

3. It is also important to note that it might not be fair to all the plaintiffs to run the statute of limitations from any of the dates suggested by defendant, since the correspondence on which defendant bases the appropriateness of these dates only involved one of the plaintiffs, Robert Clark. It is unclear at this time whether the other plaintiffs had voiced concerns as Mr. Clark did on several occasions prior to 1981, received a letter from the Corps, similar to the one received by Mr. Clark, written on January 30, 1981, or in some clear way shared in the information received by Mr. Clark.

dant's Motion to Dismiss, exhaustion of administrative remedies is not required by statute or constitutional provision, prior to bringing a suit for inverse condemnation. Furthermore, in the context of the "exhaustion" doctrine, the term administrative remedies is a term of art which generally refers to specific administrative procedures prescribed by statute and or regulation. Plaintiffs were not required to exhaust any particular administrative remedies in this case, and did not seek or enlist the help of an administrative agency.

As with defendant's first asserted defense, that plaintiffs' cause of action really sounds in tort, defendant's second assertion, that plaintiffs' claim is barred by the statute of limitations, also fails to address the possible consequences of water releases made from the Mountain Park Dam. These releases were alleged by plaintiffs to have occurred during the last six months of 1986. Defendant does not address plaintiffs' cause of action related to the Mountain Park Dam releases in its Motion to Dismiss or in its Reply to the Plaintiffs' Objection to Defendant's Motion to Dismiss. Once again, therefore, even if this court were to accept defendant's contention that plaintiffs' claim involving the releases made from the Lake Altus Dam is time barred, plaintiffs' second claim regarding actions taken involving water releases made from the Mountain Park Dam in 1986 would still survive, making dismissal of the above-captioned case inappropriate at this time.

As discussed above, neither party has presented sufficient facts with which to determine the true nature of this claim, be it tortious or otherwise. As this case progresses, plaintiffs will bear a heavy burden of proving that a taking has indeed occurred. Plaintiffs will also bear the burden of proving when the taking claim involving the Lake Altus Dam first occurred, in order to defeat defendant's allegations that this claim is time barred, assuming defendant produces a signed and authenticated copy of the letter, dated January 30, 1981, from the Corps to plaintiff Robert Clark.

Plaintiffs likewise bear a heavy burden of proving that the releases of water made from the Mountain Park Dam contributed to the taking of their land, or, in the alternative, if the first claim involving the Lake Altus Dam is found to be time barred, that the releases from the Mountain Park Dam, on their own, rise to the level of a taking.

It should be emphasized that denial of defendant's Motion to Dismiss, at this time, is not an acknowledgement by the court that plaintiffs necessarily have a valid takings claim. Nor is it a finding, at this time, that if the claim is characterized as a possible taking, plaintiffs can prove the elements necessary to establish a taking and also demonstrate compensable damages. The court's decision today represents only a determination that there exist factual disputes in the case as currently presented to the court and that, at this time, the court has been presented insufficient evidence with which to resolve these factual differences. The court emphasizes that, at trial, each of the plaintiffs, individually, bear a heavy burden both of proving that a taking of their property has occurred and of proving the measure of damages to which each and every plaintiff is entitled.

In consideration of all the aforementioned issues, dismissal of this action is premature at this time. Therefore, defendant's Motion to Dismiss is DENIED without prejudice.

IT IS SO ORDERED.