**COLUMBIA BASIN ORCHARD, Seattle Association of Credit Men, Perham Fruit Corporation**

v.

**The UNITED STATES.**

**No. 48674.**

United States Court of Claims.

July 12, 1955.

Charles L. Powell, Kennewick, Wash., for plaintiffs. Lloyd L. Wiehl, Yakima, Wash., was on the briefs.

William H. Veeder, Washington, D. C., with whom was Asst. Atty. Gen., J. Lee Rankin, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

On March 6, 1950, we dismissed plaintiffs' petition on the ground that their right of action was barred by the statute of limitations. 88 F.Supp. 738, 116 Ct. Cl. 348. Thereafter, Congress passed an Act on May 21, 1954, 68 Stat. Part 2

p. A53,[1] conferring jurisdiction on us to hear plaintiffs' claim "notwithstanding the lapse of time &ast; &ast; &ast;," and the case is now before us on the merits.

In our prior consideration of the case we made only such findings of fact as were necessary for a decision on the question of the statute of limitations. The findings of fact hereinafter set forth states all the facts necessary for a decision on the merits.

On June 4, 1946, defendant filed in the United States District Court for the Eastern District of Washington a declaration of taking of title to some 560 acres of land within the boundaries of the Grand Coulee, in the State of Washington, the property of plaintiff Columbia Basin Orchard, on which plaintiffs Seattle Association of Credit Men and Perham Fruit Corporation held mortgages. Of the property taken, 196 acres were planted in fruit trees, and had been operated as an orchard since 1932. Plaintiff alleges that prior to the condemnation on June 4, 1946, defendant had destroyed the fruit trees on the property, and it sues for just compensation for their value. The value of the trees was not included in the judgment in the condemnation case.

The question presented is whether or not the acts done by defendant constituted a taking. These acts, briefly stated, are as follows:

In preparing a plan for the construction of a dam at the south end of the Grand Coulee, to create a storage reservoir, defendant, through the Bureau of Reclamation, sank a shaft, known as Ankeny Shaft, in the Coulee at a point west of Orchard, Cowfly, and South Cowfly Lakes, and about four miles southwest of a spring which plaintiff used for the irrigation of its orchard. In so doing, the defendant encountered water, which it was necessary for it to pump out. The water pumped from this shaft flowed down to Orchard Lake. Such pumping was done from June 1939 to April 1940. During the early months of 1940 there was unusually heavy rainfall and spring runoff from the snows, which, together with the water pumped from the shaft, caused Orchard Lake to rise to an unprecedented height and to overflow the spring which plaintiff used to irrigate its orchard. The bed of Orchard Lake is an alkali flat, and the water in the lake took from the bed a considerable quantity of salts and alkali. When the waters from the lake overflowed the spring, the water in the spring became somewhat alkali and salt.

Plaintiff, to correct this situation, erected a dike around its spring, but the water from the lake continued to seep through the dike into the spring. The water in the spring remained contaminated by the water from Orchard Lake

AN ACT.

1. To confer jurisdiction upon the Court of Claims to hear, determine, and render judgment upon certain claims of the Columbia Basin Orchard, the Seattle Association of Credit Men, and the Perham Fruit Corporation.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That jurisdiction is hereby conferred upon the Court of Claims, notwithstanding the lapse of time or any provision of law to the contrary, to hear, determine, and render judgment upon all claims of the Columbia Basin Orchard, the Seattle Association of Credit Men, and the Perham Fruit Corporation (all corporations of Washington) against the United States arising out of the flooding during the period beginning June 1, 1939,

and ending April 30, 1940, of certain real property owned by the said Columbia Basin Orchard in Grant County, Washington, insofar as such flooding was the result of certain drilling operations carried out by the Bureau of Reclamation in the course of its investigations preliminary to the construction of a dam and an equalizing reservoir in the Grand Coulee: *Provided, however,* That nothing contained in this Act shall be construed as an inference of liability on the part of the United States Government.

Sec. 2. All claims against the United States within the purview of the first section of this Act shall be forever barred unless action is begun thereon within one year after the date of the enactment of this Act.

Approved May 21, 1954.

until after the waters in Orchard Lake had receded, which was in May 1940. In the meantime, notwithstanding the evident contamination of the spring waters by the waters from Orchard Lake, as shown by their milky color, plaintiff continued to irrigate its orchard. Plaintiff alleges that when the orchard was irrigated with water from the spring, the alkali and salts discharged into it by the water from Orchard Lake accentuated the already alkaline nature of the soil of the orchard so as to bring about a condition in the trees known as plasmolysis; that this condition continued throughout the year 1941 so that it became unprofitable to continue to operate the orchard and it was abandoned.

It is quite difficult to say whether or not the contamination of the spring waters by the waters from Orchard Lake caused the damage to the fruit trees, but the Commissioner has found, under the weight of the testimony, that it did, and we have concurred in the finding.

The question presented is whether or not the discharge of the water from the shaft into Orchard Lake, and the consequent contamination of the orchard spring, and the resultant damage to the trees, constituted a taking by the defendant. We are of the opinion that it did not.

█ Plaintiff's proof falls short of showing that the discharge of the waters from the shaft into Orchard Lake would have caused it to overflow the spring. From June 1939 to April 1940 defendant pumped from this shaft some 2,128 acre-feet of water; but during the early months of 1940 there was unusually heavy rainfall and spring runoff from the snows. Instead of a normal rainfall, of 0.75 of an inch, for the last 29 years, in February 1940 there was 3.12 inches of rainfall. Such precipitation was equivalent to 38,000 acre-feet within the water shed of Orchard Lake, as against 2,128 acre-feet which defendant discharged into it from the Ankeny Shaft. Plainly, the discharge of this water from the Ankeny Shaft would not

have caused Orchard Lake to overflow the spring, except for the unprecedented rainfall. It is, therefore, impossible to say that the flooding of the spring or seepage into it, was the natural or probable consequence of the discharge of the waters from the shaft into the lake.

██ The most that can be said is that the discharge of the waters from the shaft into the lake was a contributing factor towards its overflow, or the seepage into it, but certainly it cannot be said that the overflow or seepage from the lake was the natural or probable consequence of the discharge of these waters into it. To constitute a taking, the overflow of or seepage into the spring must have been the direct, natural or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action. (See cases cited and discussed, infra.) A tort action may lie in the proper forum for such an incidental or consequential injury, but not a suit for just compensation. There must have been an intent on the part of the defendant to take plaintiff's property or an intention to do an act the natural consequence of which was to take its property.

In Vansant v. United States, 75 Ct.Cl. 562, 564, 566, we said:

"A taking within the meaning of the amendment must have been an intentional appropriation of the property to the public use." * * *

In Horstmann v. United States, 257 U. S. 138, 146, 42 S.Ct. 58, 60, 66 L.Ed. 171, the Supreme Court said:

"We think the cases at bar are within the latter decisions, and it would border on the extreme to say that the government intended a taking by that which no human knowledge could even predict. Any other conclusion would deter from useful enterprises on account of a dread of incurring unforeseen and immeasurable liability. This comment is of especial pertinence that the result of the government's work to the prop-

erties of plaintiffs could not have been foreseen or foretold is a necessary deduction from the findings of the Court of Claims. The court found that there is obscurity in the movement of percolating waters, and that there was no evidence to remove it in the present case, and necessarily there could not have been foresight of their destination nor purpose to appropriate the properties."

In Sanguinetti v. United States, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608, the question was whether or not the erection of a canal which allegedly caused an overflow of plaintiff's property constituted a taking. The court said, 264 U.S. at page 147, 44 S.Ct. 264:

"* * * It was not shown, either directly or inferentially, that the government or any of its officers, in the preparation of the plans or in the construction of the canal, had any intention to thereby flood any of the land here involved, or had any reason to expect that such result would follow. That the carrying capacity of the canal was insufficient during periods of very heavy rains and extremely high water was due to lack of accurate information in respect of the conditions to be met at such times. The engineers who made the examination and recommended the plans determined, upon the information which they had, that the canal would have a capacity considerably in excess of the requirements in this respect."

Finally, the Court said, 264 U.S. at pages 149-150, 44 S.Ct. at page 265:

"* * * It was not shown that the overflow was the direct or necessary result of the structure; nor that it was within the contemplation of or reasonably to be anticipated by the government. If the case were one against a private individual, his liability, if any, would be in tort. There is no remedy in such case against the United States.

Keokuk [& Hamilton] Bridge Co. v. United States, 260 U.S. 125, 43 S.Ct. 37, 67 L.Ed. 165.

"The most that can be said is that there was probably some increased flooding due to the canal and that a greater injury may have resulted than otherwise would have been the case. But this and all other matters aside, the injury was in its nature indirect and consequential, for which no implied obligation on the part of the government can arise. See Gibson v. United States, 166 U. S. 269, 17 S.Ct. 578, 41 L.Ed. 996; Bedford v. United States, 192 U.S. 217, 24 S.Ct. 238, 48 L.Ed. 414; Transportation Co. v. Chicago, 99 U.S. 635, 25 L.Ed. 336; Jackson v. United States, 230 U.S. 1, 33 S.Ct. 1011, 57 L.Ed. 1363; Horstmann Co. v. United States, 257 U.S. 138, 42 S.Ct. 58, 66 L.Ed. 171; Coleman v. United States, C.C., 181 F. 599."

See also Cotton Land Co. v. United States, 75 F.Supp. 232, 109 Ct.Cl. 816, 829.

■■ The Supreme Court has in recent decisions expressed the opinion that a taking is compensable under the Constitution, although the facts are not sufficient to imply an agreement to pay for the land taken. See the discussion of recent decisions of the Supreme Court in Cotton Land Co. v. United States, supra. However, in no case has the Supreme Court ever indicated that an accidental or negligent impairment of the value of property constitutes a taking. They have never departed from the rule that there must have been an intent on the part of the Government to appropriate the property to the use of the public, or to deprive the owner of the beneficial ue of it for the benefit of the public. An accidental or negligent impairment of the value of property is not a taking, but, at most, a tort, and as such is not within the jurisdiction conferred on this court by Congress. That jurisdiction permits us to award recovery for dam-

ages, liquidated or unliquidated, but not "in cases sounding in tort."

Our opinion in Fonalledas v. United States, 107 F.Supp. 1019, 123 Ct.Cl. 483, upon which plaintiffs rely, is not to the contrary. In that case the Government's contractor had erected dikes around three sides of an area in which the Government discharged spoil from the dredging of a channel, but it had left one side open. The direct and natural result of leaving this side open with the continued discharge of the spoil on the area caused it to encroach upon plaintiff's property. It was obvious that the continued discharge of it would cause it to encroach upon plaintiff's property and, therefore, the continued discharge of it under these circumstances was a deliberate act of the Government's contractor, which impaired the value of plaintiff's property and constituted a temporary appropriation of it. From these facts an intent to take could be implied.

In the case at bar the Bureau of Reclamation, as we have found, could not have foreseen that the discharge of this water from the Ankeny Shaft on the Coulee would have caused Orchard Lake to overflow or seep into plaintiffs' spring. Such seepage or overflow was not the direct, natural or probable consequence of the Government's act, and for this reason no intent to take can be implied. The most that can be said is that plaintiffs' spring was contaminated as the result of the negligence of the Government.

Although it was not true at the time of the act complained of in this case, today plaintiffs may have a right of action under the Tort Claims Act, 28 U.S.C. § 2671 et seq. But to such an action the Government might well have interposed the defense that the act of the plaintiff itself in irrigating these trees, with knowledge of the fact that the spring waters had been contaminated, was contributory negligence, or the proximate cause of the damage, which perhaps would have barred a recovery. We have found that the waters had receded from the lake by May 22, 1940, and that by the middle of the summer the waters of the spring were no longer contaminated. This being true, it would seem that plaintiffs could have waited until the contamination had disappeared before irrigating its trees, and the damage of which it now complains would not have occurred.

The plaintiffs' damage was not the direct, natural or probable result of the defendant's action, but rather the incidental and consequential result of the defendant's authorized activity. It is well settled that consequential damages form no basis for a recovery under the Fifth Amendment.

It results that plaintiffs' petition must be dismissed.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.