Robert F. BISER

v.

**TOWN OF BEL AIR, MARYLAND, et al.**

**Civ. No. Y–91–1785.**

United States District Court, D. Maryland.

Nov. 27, 1991.

W. Michel Pierson, Baltimore, Md., for plaintiff.

Carol B. O'Keeffe, Columbia, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, Senior District Judge.

Defendants filed a Motion pursuant to Rule 12(b)(1), (6), and 12(c), Fed.R.Civ.P., to dismiss or in the alternative for judgment on the pleadings. A Rule 12(c) motion is inappropriate because Defendants have not filed an answer to the Complaint and the pleadings are not closed, and the Court is satisfied that the Complaint alleges sufficient facts to withstand dismissal for lack of subject matter jurisdiction. The Motion will be considered under Rule 12(b)(6), Fed. R.Civ.P. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982).[1]

After consideration of the pleadings, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted.

## FACTS

For consideration under Rule 12(b)(6), Fed.R.Civ.P., the factual allegations of the Complaint will be taken as true. Those allegations show that on June 26, 1991, Plaintiff Robert F. Biser filed a Complaint, pursuant to Section 1983, Title 42, against the Town of Bel Air, Maryland, and various town employees. The Complaint alleges that Defendants intentionally and maliciously deprived him of his property rights without due process of law and in violation

---

1. Defendants contend that Plaintiff has not alleged an entitlement under state law, and that such is fatal to Plaintiff's claim of a deprivation of property without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Defendants contend that even if Plaintiff could articulate an entitlement under state law, Plaintiff has received post-deprivation process and thus has not stated a claim under Section 1983. *Id.*

The Court is satisfied that the Complaint includes sufficient allegations to support a claim

of deprivation of *substantive* due process. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Accordingly, the Court will consider the instant motion on the merits pursuant to Rule 12(b)(6), Fed.R.Civ.P. *Id.* at 1219. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Calvert v. Sharp*, 748 F.2d 861, 863 (4th Cir. 1984). *See, generally* 2A Moore's Federal Practice ¶ 12.16 (1982 & Supp.) and 27 Fed.Proc., L.Ed. § 62:453.

of the Fourteenth Amendment, and of his rights under Article 24 of the Declaration of Rights of Maryland.

Plaintiff owned a tract of real property located in the Town of Bel Air. Under the Town Zoning Ordinance, the property was situated in an "R–2" (General Residence) district.[2] Plaintiff desired to use his property to construct two office buildings, and met with Defendant Carol Deibel, Director of Planning and Community Development of the Town of Bel Air, in August of 1988 to discuss his planned use of the property.

Plaintiff explicitly expressed to Defendant Deibel his intention to construct commercial office buildings, and sought her assistance in obtaining final special exception approval. (Complaint ¶ 12). Defendant Deibel suggested that Plaintiff seek certain variances, obtain building permits, construct the buildings and then request special exception approval after the buildings were constructed. (Complaint ¶ 13). Deibel advised Plaintiff that the buildings "would have to exist" before the Board of Appeals could grant the special exception approval to permit the conversion of the buildings to office use. *Id.*

Plaintiff then presented his plan to the Board of Appeals on September 27, 1988. The Board did not object to Plaintiff's plans, and approved certain variances. Defendants Docken, Young and Yantz were present at that meeting. (Complaint ¶ 14). Plaintiff then completed plans for the building and applied for building permits in May, 1989.

The plans and application submitted with the permits unequivocally demonstrated that the buildings were designed solely for commercial use. (Complaint ¶ 15, Motion App. C, p. 6). The permits were issued on June 27, 1989. On the face of the permits, Plaintiff's phrase "commercial office buildings" was stricken and the term "dwellings" was inserted. No other changes were made to the permits, and Plaintiff began construction.

In August of 1989, Plaintiff sought approval of an underground storm water management facility. Plaintiff desired to complete the facility before the end of October, to avoid a three month delay over the winter months. He was advised by town employees that he would not receive final approval until the Board had granted the special exception for office buildings. Plaintiff contacted Deibel, who informed him that he could apply for a special exception approval as long as the building was "under roof" and the windows were installed prior to the Board of Appeals hearing. Plaintiff completed the necessary construction and presented his application to the Board in September, 1989. Members of the Board expressed concern that the special exception was improper because the buildings were not dwellings and, thus, a "conversion" could not take place.[3]

On September 28, 1989, two days after the hearing, Defendant Raney, Superintendent of Public Works for the Town of Bel Air, issued a stop work order. The order stated that the structures would have to be made suitable for residential use to comply with Building Code requirements. To avoid the pending three month delay in construction, Plaintiff installed the bathroom and kitchen facilities necessary to make the structures comply with the building code. The stop work order was lifted on October 16, 1989.

Plaintiff came before the Board again on October 24, 1989. At this meeting, he stat-

**2.** The Town of Bel Air Zoning Ordinance (Ordinance No. 208, Art 7) allows, upon approval by the Board of Appeals, the:

conversion of a dwelling or part thereof, into the office or studio of one or more physicians, surgeons, dentists, musicians, artists, lawyers, architects, engineers, teachers, insurance agents, real estate agents, photographers, accountants or other professionals; provided that the exterior residential appearance of the building shall be retained, that no flood lighting shall be used and adequate off-street park-

ing areas shall be provided to accommodate all personnel [sic] and patrons. The Board of Appeals may impose further conditions pursuant to § 16.0443 of this Ordinance in order to protect the neighborhood, adjacent properties and community." (Motion App. A)

**3.** The issue was raised that there were no kitchens, bedrooms, or other living accommodations in the building, and no use and occupancy permits had been issued.

ed that, in reliance on the prior representations of the Board and Mrs. Deibel, he had expended substantial amounts of money and time constructing the buildings. He admitted that the buildings did not comply with Code requirements for dwellings, and stated it would be extremely expensive to rebuild the non-conforming systems to get use and occupancy permits.

Nevertheless, the Board again denied his request for a special exception, stating in its opinion that "at this point in time, there are no dwellings on the subject properties which can be converted to professional offices. . . . The buildings are not complete, and Use and Occupancy Permits have not been issued." (Motion App. C, p. 4)

In an opinion dated January 26, 1990, the Circuit Court, Harford County, concluded that the Town of Bel Air and the Board of Appeals were estopped from denying the approval because of Plaintiff's reliance on Defendants' representations regarding the procedure for obtaining a special exception. The court found that the ordinance authorizing the special exception was ambiguous and capable of at least two interpretations. One interpretation would require that dwellings, *with use and occupancy permits*, exist prior to conversion. The second interpretation would not require use and occupancy permits, i.e. if building exteriors resemble dwellings in appearance, the special exception can be sought for immediate conversion to office use. The court remanded the case with instructions to the Board to grant the special exception.

After the Circuit Court's decision, Plaintiff was further delayed in obtaining a special exception until May of 1990. A final use and occupancy permit was issued on October 16, 1990. (Complaint ¶ 30).

Plaintiff alleges that he was subjected to substantial expenses, loss of opportunity to lease the buildings, loss of good will and prospective income, bad press, emotional and mental anguish, distress and pain as a result of the delays and the Defendants' actions. Plaintiff further alleges that Defendants' conduct was arbitrary and capricious, and not reasonably related to any permissible governmental objective.

## DISCUSSION

The Supreme Court has set forth three types of Section 1983 claims that may be brought against the State under the Due Process Clause of the Fourteenth Amendment. First, the Clause incorporates many of the specific protections defined in the Bill of Rights. "A plaintiff may bring suit under Section 1983 for a state official's violation of his rights to, e.g., freedom of speech or freedom from unreasonable searches and seizures." *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). Second, the Due Process Clause contains a "guarantee of fair procedure." *Id.* In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981); *Carry v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978)). In such circumstances, the constitutional violation is not complete until the State fails to provide due process. Since Plaintiff has successfully obtained a special exception through post deprivation procedure, any deprivation of procedural due process has been cured, and the Complaint fails to state a claim of deprivation of procedural due process.

A third type of Constitutional protection actionable under Section 1983, and the one which Plaintiff relies upon in his Complaint, is substantive due process. The substantive component of the Due Process Clause bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). The right to be free from arbitrary state action is a substantive due process right that arises directly from the constitution. *Regents of University of Michigan v. Ewing* 474 U.S. 214, 229–30, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J.,

concurring). As to this type of claim, the constitutional violation actionable under Section 1983 is complete when the wrongful action is taken. The existence of state post deprivation remedies therefore has no bearing on whether the plaintiff has stated a constitutional claim. *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986); *Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir.1990); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500 (11th Cir.1985) (en banc), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). *See also Fitzgerald v. Williamson*, 787 F.2d 403, 408 (8th Cir.1986) ("there are no precise standards for determining what governmental actions are proscribed by substantive due process.")

Defendants have alleged that Biser has no legitimate claim of entitlement under State law to a special exception permit, and thus has failed to state a valid claim under Section 1983. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). State law is not the exclusive source of constitutional rights cognizable under Section 1983. The touchstone of due process is protection of the individual against the arbitrary exercise of the powers of government. *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986), concurring opinion at 474 U.S. 327, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986); *Monroe v. Pape*, 365 U.S. 167, 173–174, 81 S.Ct. 473, 476–477, 5 L.Ed.2d 492 (1961). Clearly Biser may not claim an entitlement under state law to a special exception, as the decision to grant or deny a special exception is within the Board's discretion.

Plaintiff relies on the substantive component of due process. "Each new claim to [substantive due process] must be considered against a background of constitutional purpose, as they have been rationally perceived and historically developed." *Regents of University of Michigan v. Ewing, supra.* Though a person may be entitled to some protection against the mali-cious and intentional misinformation provided by a government official, Plaintiff has not alleged conduct that rises to the level of a substantive due process violation. Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that a loss caused by such conduct is a deprivation of property within the meaning of the Due Process Clause would trivialize the centuries old principle of Due Process law. Plaintiff pleads no facts to support his allegation that Defendants *intentionally* and *maliciously* misdirected him on the proper procedure to follow to obtain a special exception permit. The facts alleged support the inference that Town employees simply gave varying interpretations to an ambiguous provision; but no more. At most, the way in which the Town employees handled Plaintiff's application could show bureaucratic bungling and a lack of coordination between the branches of a municipal government. Such action, or lack thereof, does not rise to the level of a substantive due process violation. Accordingly, Defendants Motion to Dismiss will be granted.