Jerome M. THUNE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 97–679C.

United States Court of Federal Claims.

June 5, 1998.

**50**

R. Scott Garland, Jackson, WY, for plaintiff.

Thomas A. Coulter, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## OPINION

MEROW, Judge.

Plaintiff operated a hunting camp on federal land which was destroyed when a controlled burn set by the government escaped. He asserts that the destruction was a taking entitling him to just compensation under the Fifth Amendment to the U.S. Constitution. The matter is currently before the court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) or, in the alternative, for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4). For the reasons stated below, it is determined that plaintiff's cause of action sounds in tort and is beyond the jurisdiction of the court. Therefore, defendant's motion to dismiss pursuant to RCFC 12(b)(1) is granted.

## BACKGROUND

The following undisputed facts are based on the complaint and a related federal district court decision referenced therein. In 1989, the United States Forest Service ("USFS"), the Wyoming Game and Fish Department, and the Rocky Mountain Elk Foundation began the Gros Ventre Big Game Enhancement Project aimed at improving elk habitat in the Bridger–Teton National Forest in the state of Wyoming. The project called for controlled fires to reduce sagebrush and increase herbaceous forage production for elk. On October 14, 1991, as part of the project, the USFS ignited a controlled burn known as the Dry Cottonwood fire. At the time, the plaintiff, Jerome M. Thune, operated a hunting camp on national forest land not far from the burn area under a license issued by the USFS.

Before igniting the fire, the USFS received a weather forecast showing favorable wind conditions for the controlled burn. However, over the next two days, wind conditions changed significantly and the fire spread beyond the planned burn area. The USFS warned Mr. Thune that his hunting camp was potentially in the path of the fire and that he should evacuate. Mr. Thune fled with his pack horses and some equipment but he left much gear behind because it would have required a significant amount of time to pack it out.

On October 16, 1991, Mr. Thune's hunting camp was destroyed by the fire. He asserts that the value of his lost property is $43,069.62. The fire was eventually extinguished by a snow storm.

Mr. Thune filed an administrative claim for his damages with the USFS but the agency denied the claim. On October 4, 1993, Mr. Thune filed a complaint in the United States District Court for the District of Wyoming ("district court") asserting that the government was liable under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80 (1994) ("FTCA"). Mr. Thune alleged that the USFS "was negligent in setting and controlling the Dry Cottonwood fire and in failing to warn plaintiff in time for him to evacuate all his equipment." Def.'s App. at 6. Mr. Thune also asserted an inverse condemnation claim which he withdrew after acknowledging that it was cognizable, if at all, only in this court. *Id.* at 4.

The government moved for summary judgment. The district court deemed the motion a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and granted the motion by order dated January 11, 1995. *Thune v. United States*, 872 F. Supp. 921 (D.Wyo.1995). The district court

found that it lacked jurisdiction because the USFS's actions fell within the "discretionary function" exception of the FTCA. *Id.* at 924–25; *see* 28 U.S.C. § 2680(a).

Mr. Thune initiated this action on October 8, 1997. In the complaint, he alleges that his property was taken by the government without just compensation in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution.[1] He asserts that the USFS ignited the Dry Cottonwood fire under the authority of the Gros Ventre Project but "failed to maintain and control" it and allowed it to grow "beyond its prescribed limits," resulting in the destruction of his property. Complaint ¶ 9. He states that the taking was "unconstitutional" and "unauthorized" and that he is entitled to $43,069.62 in compensation plus interest, costs, and attorney fees. *Id.* at ¶¶ 1, 15. He invokes this court's jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491 (1994).

On February 6, 1998, defendant filed the subject motion to dismiss. Defendant argues that plaintiff's claim sounds in tort and is therefore beyond the jurisdiction of the court because it is based on "unconstitutional" and "unauthorized" government action and because the damage to plaintiff's property was not the direct consequence of any authorized government act.

In his opposition, plaintiff maintains that the complaint clearly alleges that the destruction of his property resulted from authorized government action, *i.e.*, the ignition of the Dry Cottonwood fire. Plaintiff also requests leave to amend his complaint if it is determined that the presence of the words "unconstitutional" and "unauthorized" defeat his taking claim. Finally, plaintiff argues that the destruction of his hunting camp was a direct consequence of the government's actions because it was foreseeable that winds could change and that the fire could escape.

## DISCUSSION

■ Where, as here, "a Rule 12(b)(1) motion simply challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations—that is, the movant presents a 'facial' attack on the pleading—then those allegations are taken as true and construed in a light most favorable to the complainant." *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed.Cir. 1993), *cert. denied,* 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994). However, "if a pleader avers jurisdiction generally, but allegations in later portions of the complaint negate its existence, the court should dismiss the action." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 at 220–21 (2d ed.1990). In addition, "[t]he court will not accept as true allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading." *Id.* § 1363 at 464–65.

■ "The Court of Federal Claims is a court of limited jurisdiction." *Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir. 1997). The Tucker Act confers jurisdiction over money claims against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967). Jurisdiction will lie only if the constitutional, statutory, or regulatory provision relied on "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Id.* at 607, 372 F.2d at 1009; *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The Takings Clause of the Fifth Amendment to the U.S. Constitution is one such provision. *United States v. Causby,* 328 U.S. 256, 267, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). However, as provided in the Tucker Act, the court "lacks jurisdiction over tort actions against the United States." *Brown,* 105 F.3d at 623.

---

1. The Takings Clause provides, "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V.

■ Two factors relevant here serve to distinguish takings from torts. First, "takings result only from authorized acts of government officials." *Earnest v. United States,* 33 Fed.Cl. 341, 344 (1995); *Tabb Lakes, Ltd. v. United States,* 10 F.3d 796, 802–03 (Fed. Cir.1993). "Challenges to the propriety or lawfulness of government actions sound in tort." *Bernaugh v. United States,* 38 Fed.Cl. 538, 543 (1997). Second, to state a taking claim, plaintiff must allege that there was "an intent on the part of the defendant to take plaintiff's property or an intention to do an act the natural consequence of which was to take [his] property." *Columbia Basin Orchard v. United States,* 132 Ct.Cl. 445, 450, 132 F.Supp. 707, 709 (1955). The property loss "must have been the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action." *Id.* "An accidental or negligent impairment of the value of property is not a taking, but, at most, a tort." *Id.* at 452, 132 F.Supp. at 710. Thus, "the probability and foreseeability of the damage is a primary determinative element in whether a taking or a tort occurred." *Baird v. United States,* 5 Cl.Ct. 324, 330 (1984).

Defendant contends that plaintiff is asserting a tort claim beyond the court's jurisdiction because he "clearly alleges that the 'taking' of his personal property resulted from 'unconstitutional' and 'unauthorized' action by the Forest Service." Def.'s Mot. at 8. Defendant relies on paragraph 1 of the complaint, where plaintiff asserts that his claim "aris[es] out of an unconstitutional taking by the United States," and paragraph 15, where plaintiff states that he is entitled to just compensation as a result of the government's "unauthorized taking."

It is concluded that plaintiff's use of the terms "unconstitutional" and "unauthorized" is not fatal to his taking claim because the complaint as a whole plainly asserts that his property loss is traceable to authorized government action. Specifically, plaintiff alleges that the USFS was statutorily authorized to implement the Gros Ventre Project and that

the Dry Cottonwood fire, which led to the destruction of his hunting camp, was ignited by the USFS under the authority of this project. Complaint ¶¶ 8, 9.[2]

Defendant also argues, however, that plaintiff has not stated a taking claim because his allegations do not show that the government intended to take his property or do an act the natural consequence of which was to take his property. Instead, defendant asserts, the complaint alleges that government negligence intervened causing the fire to escape and destroy plaintiff's hunting camp. Alternatively, the district court's decision referenced in the complaint states that unexpected wind changes caused the fire to escape. Either way, defendant reasons, the destruction of plaintiff's property was not a direct consequence of any authorized government act and, therefore, no intent to take can be inferred.

■ This line of reasoning is well founded. The complaint states that plaintiff's hunting camp was not within the intended burn area, indicating that its destruction was not a natural consequence of the Dry Cottonwood fire as designed. Complaint ¶ 9. Instead, plaintiff alleges that the destruction occurred because the USFS "failed to maintain and control the Dry Cottonwood fire" and because the USFS was "negligent." *Id.* ¶¶ 9, 11. These allegations, even if true, do not give rise to a taking. A claim for damages resulting from the government's faulty, negligent or improper implementation of an authorized project sounds in tort. *See Hayward v. United States,* 30 Ct.Cl. 219, 221, 1895 WL 693 (1895) (claim for damages resulting from faulty construction of dam sounds in tort); *In re Chicago, Milwaukee, St. Paul and Pac. R.R. Co.,* 799 F.2d 317, 326 (7th Cir.1986) (damage caused by "a foul-up in the implementation of the program" may be a tort but not a taking), *cert. denied,* 481 U.S. 1068, 107 S.Ct. 2460, 95 L.Ed.2d 869 (1987); *see also McNeil v. City of Montague,* 124 Cal.App.2d 326, 268 P.2d 497 (1954) (damages resulting from city's negligence in permitting con-

2. Since plaintiff's use of the terms "unconstitutional" and "unauthorized" do not render his taking claim defective, his request for leave to amend the complaint to remove these terms is denied as moot.

trolled burn to escape does not give rise to taking claim under California State Constitution).[3]

■ The finding in the district court's decision that unexpected wind changes rather than government negligence caused the fire to burn out of control does not convert plaintiff's tort claim into a taking. "[D]amage due to 'a random event induced more by a natural phenomenon than by Government interference'" does not give rise to a taking "'even if there is permanent damage to property partially attributable to Government activity.'" *Baird*, 5 Cl.Ct. at 330 (quoting *Berenholz v. United States*, 1 Cl.Ct. 620, 626 (1982), *aff'd*, 723 F.2d 68 (Fed.Cir.1983)).

In *Baird*, the government released substantial amounts of water from dams and reservoirs into a river as a result of an unusually wet winter and spring and a recent severe storm. Plaintiffs alleged that the releases caused flooding which damaged their property and amounted to a taking. The court found that no taking occurred because the flooding was caused more by unusual climatic conditions, *i.e.*, the wet winter and severe storm, than by deliberate government action. 5 Cl.Ct. at 330.

Likewise, in *Sanguinetti v. United States*, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608 (1924), the government built a canal to divert slough waters into a nearby river. A year after construction was completed there was a severe flood. The capacity of the canal proved insufficient to carry away the flood waters which overflowed plaintiff's land, damaging and destroying crops and trees and injuring the land itself. Plaintiff brought suit alleging that the construction of the canal and the resultant flood damage was a taking. The Court disagreed, holding that the land would have flooded to some extent even if the canal had not been built and that plaintiff did not show "that the overflow was the direct or necessary result of the structure; nor that it was within the contemplation of or reasonably to be anticipated by the Government. If the case were one against a private individual, his liability, if any, would be in tort." *Id.* at 149–50, 44 S.Ct. 264.

■ Plaintiff argues that this case is different because wind changes and the possibility that the fire could escape were foreseeable. However, this unsupported assertion in plaintiff's brief is contradicted by the district court's decision referenced in his complaint. That decision reveals that the USFS conducted daily on-site measurements of temperature and wind speed and requested spot forecasts from the National Weather Service in preparation for the controlled burn. 872 F.Supp. at 922. On October 14, 1991, the day the fire was ignited, the USFS received a weather forecast for the area showing favorable wind conditions. *Id.* Thus, there is no basis for inferring that the government should have anticipated that wind changes would blow the fire out of control. Furthermore, even if wind changes were foreseeable, it would not convert plaintiff's tort claim into a taking. Liability for damage caused by an intentionally set fire which escapes because of intervening winds, whether foreseeable or not, has traditionally been determined under tort law. *See* Annotation, *Liability for spread of fire intentionally set for legitimate purpose*, 25 A.L.R.5th 391, 433–41, 1994 WL 906560 (1994).[4]

---

3. Likewise, accidental or incidental damage resulting from the government's non-negligent implementation of an authorized project is not a taking. For instance, in *Harris v. United States*, 205 F.2d 765 (10th Cir.1953), the government sprayed herbicides on federal land to eliminate unwanted vegetation. Although the government conducted the spraying in a non-negligent manner, some of the chemicals drifted beyond the spraying area onto plaintiffs' property, damaging cotton and peanut crops. The court rejected plaintiffs' taking claim, stating that it did "not understand that a single isolated and unintentional act of the United States resulting in damage or destruction of personal property amounts to a taking in a constitutional sense. It is, we

think, rather a tortious act for which the government is only consensually liable." *Id.* at 768; *see also Keokuk & Hamilton Bridge Co. v. United States*, 260 U.S. 125, 43 S.Ct. 37, 67 L.Ed. 165 (1922) (incidental damage to plaintiff's pier resulting from non-negligent government blasting not a taking).

4. Plaintiff's reliance on *Bettini v. United States*, 4 Cl.Ct. 755 (1984), is misplaced. There, a government-built road collapsed causing a landslide which damaged plaintiff's property. Plaintiff asserted a taking and the government moved to dismiss. The court denied the motion, finding it "within the realm of factual possibility that the particular location involved here was such that a

While plaintiff's property loss certainly is partially attributable to an authorized government project—his hunting camp would not have been destroyed but for the ignition of the Dry Cottonwood fire—the complaint and the district court's decision referenced therein make clear that the destruction was not a direct, natural, and probable consequence of the project functioning as designed. Instead, the damage resulted from intervening government impropriety or unanticipated natural events and for this reason no intent "to do an act the natural consequence of which was to take [plaintiff's] property" can be established. *Columbia Basin*, 132 Ct.Cl. at 450, 132 F.Supp. at 709. Plaintiff's claim is based on "[a]ccidental or negligent impairment of the value of property [which] is not a taking, but, at most, a tort, and as such is not within the jurisdiction conferred on [this court] by Congress." *Id.* at 452, 132 F.Supp. at 710. Absent special jurisdictional legislation by Congress, plaintiff's tort claim cannot be considered. *See Mizokami v. United States*, 188 Ct.Cl. 736, 741, 414 F.2d 1375, 1377 (1969).

## CONCLUSION

Based on the foregoing, it is concluded that plaintiff's cause of action sounds in tort and is beyond the jurisdiction of the court. Therefore, defendant's February 6, 1998 motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) is **GRANTED**. The clerk is instructed to dismiss the complaint. No costs.

---

mudslide was a clearly foreseeable and probable result of constructing a road, or that the construction which took place was bound to collapse." *Id.* at 761. In this case, Mr. Thune has not alleged that the destruction of his property was "bound to" occur given the design of the Dry Cottonwood fire. Instead, he alleges that intervening government negligence or natural events caused the damage, an allegation missing from *Bettini*.