**Sidney and Sandi NAZELROD**
**Plaintiffs**

v.

**GARRETT COUNTY SANITARY DISTRICT, INC. Defendant**

**No. CIV.H–01–3848.**

United States District Court, D. Maryland.

Jan. 15, 2003.

Robert Louis Allen, Jr., McHenry, MD, for Sandi Nazelrod.

Christine T. Altemus, Columbia, MD, for City of Loch Lynn.

regulation, (Appellant's Brief at 21–22), must fail.

Kevin Bock Karpinski, Allen Karpinski Bryant and Karp PA, Baltimore, MD, for Board of Garrett County Commissioners.

## MEMORANDUM OPINION

ALEXANDER HARVEY, III, Senior District Judge.

Sidney Nazelrod and his wife Sandi (the "Nazelrods") are the owners of business properties located in the Town of Loch Lynn Heights, Maryland.[1] On December 13, 2001, the Nazelrods filed a civil action in this Court seeking a recovery for damage to their businesses allegedly caused by leaking municipal water lines which resulted in the flooding of portions of their properties.

In their complaint, the Nazelrods named as defendants the City of Loch Lynn, Board of Garrett County Commissioners, Garrett County Administrator R. Lamont Pagenhardt, Garrett County Sanitation Department and Tharager's.[2] After some of the defendants filed motions to dismiss, plaintiffs voluntarily dismissed their claims against the City of Loch Lynn and Tharager's.[3] In its Memorandum and Order of April 18, 2002, this Court granted the motion to dismiss of the Board of County Commissioners for Garrett County and County Administrator Pagenhardt. As noted in that ruling, Garrett County Sanitary District is an autonomous corporate body which alone is responsible for the maintenance of and repairs to water lines located in Garrett County (Slip op. at 6). Accordingly, the Court's Order directed the Clerk to correct the docket to show that the sole remaining defendant in this case is Garrett County Sanitary District,

Inc. (hereinafter "Sanitary District"). Thereafter, the Court granted leave to plaintiffs to file an amended complaint.

Pursuant to a Scheduling Order entered by the Court, the parties have engaged in discovery. Presently pending is a motion for summary judgment filed by defendant Sanitary District. In support of that motion, counsel for defendant has submitted a memorandum of law and exhibits consisting of excerpts from depositions taken during discovery. Counsel for the Nazelrods in turn has filed an opposition to defendant's pending motion, together with other exhibits. Recently, defendant submitted a reply to plaintiffs' opposition.

Following its review of the memoranda, exhibits and other matters of record here, this Court has concluded that no hearing is necessary for a ruling on the pending motion. *See* Local Rule 105.6. For the reasons stated herein, defendant's motion for summary judgment will be granted as to Counts I, II and III of the amended complaint and the other remaining Counts will be dismissed without prejudice.

## I

### *Plaintiffs' Claims*

The amended complaint contains seven counts, as follows:

Count I   - Inverse Condemnation/Temporary Taking
Count II   - Procedural Due Process Section 1983
Count III   - Substantive Due Process Section 1983
Count IV   - Common Law Trespass
Count V   - Intentional Interference With Prospective Business Relationships
Count VI   - Negligent Inspection
Count VII   - Negligent Maintenance

Counts I, II and III assert claims under federal law while Counts IV–VII assert claims under Maryland common law.

---

1. Loch Lynn Heights is a municipality located in Garrett County, Maryland.

2. The Town of Loch Lynn Heights was incorrectly named in the complaint as "City of Loch Lynn." Garrett County Sanitary District,

Inc. was incorrectly named "Garrett County Sanitation Department."

3. Tharager's is an engineering firm located in Clarksburg, West Virginia.

Count I is brought under the Fifth and Fourteenth Amendments to the United States Constitution while Counts II and III are brought under 42 U.S.C. § 1983. It is alleged that this Court has jurisdiction of plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1343 while this Court's jurisdiction of plaintiffs' state law claims is alleged to be appropriate under 28 U.S.C. § 1367. In their opposition to the pending motion for summary judgment, plaintiffs have withdrawn Count V of the amended complaint which alleges a claim of intentional interference with prospective business relationships.

## III

### Background Facts [4]

The Nazelrods own business properties in Loch Lynn Heights located at 7 Alderson Street, which is occupied by the Keller–Stonebraker Real Estate Office, and also at 17 Alderson Street, which is occupied by Stop N Go U–Haul Office. These two businesses are adjacent and are owned and operated by the plaintiffs.

The Nazelrods first noticed a small amount of water on their properties in January, 2000. A stream of water was later seen flowing across a part of their properties on February 2, 2000. The Sanitary District was called by Mr. Nazelrod on several occasions in February but no one was sent to investigate the source of the running water. Later, in March, 2000, John Miller, an employee of the Sanitary District, inspected and took water samples. Testing of the chlorine levels of the water was undertaken in an effort to determine whether the water originated from a water line maintained by the Sanitary District. No chlorine was found, and the Nazelrods

were advised by Miller that he did not believe that the water in question came from a water line maintained by the Sanitary District, but thought that the source was a sewer line or a wet weather spring. Miller also performed a sound test to determine if there was a leak, but no leaks were found at that time. A leak was later found on April 26, 2000 at the corner of Third Street and Okochee. That leak was repaired by the Sanitary District, but water continued thereafter to run through plaintiffs' properties.

In June of 2000, Vaughan Sweitzer, another employee of the Sanitary District, dug test holes and discovered water leaking from the corner of Second Avenue and Alderson Street. The Sanitary District came to the site and ran a camera down a sewer line to check for leaks, but none were found.

In July, 2000, the Town of Loch Lynn Heights installed a four inch water pipe in an effort to prevent water from running onto plaintiffs' properties. According to Mr. Nazelrod, the pipe, when installed, dumped water out and onto his properties. That month, green slime began to accumulate on plaintiffs' properties but no testing of the slime was ever performed. Mrs. Nazelrod was advised by the Sanitary District that the green slime was a sewage-related problem.

In September of 2000, a leak in the area was reported to the Sanitary District by Sweitzer. Chlorine residual was found, and although the leak was repaired, water continued thereafter to run through plaintiffs' properties.

In January of 2001, the Sanitary District was advised by Sweitzer of a leak at 103 Alderson Street. The Nazelrod properties

---

**4.** The facts summarized below, where disputed, reflect plaintiffs' version of the events to the extent that it is supported by affidavits, depositions or other documentary evidence. *Magnuson v. Peak Technical Servs.*, 808 F.Supp. 500, 504 (E.D.Va.1992).

are located down hill from 103 Alderson Street. Chlorine tests performed on the water flowing from the leak were positive, and the line was repaired by the Sanitary District. According to Mr. Nazelrod, when a hole was dug to perform the repairs, the water "burst up out of the ground" flooding the land around Alderson Street, including his properties.

During December of 2000 and January of 2001, the water on plaintiffs' properties iced over, and the Nazelrods had to break up the ice in order to move U–Haul trucks. On one occasion, Mrs. Nazelrod fell and injured her shoulder while breaking up the ice. On two occasions, Sweitzer used heavy equipment to break up the ice and remove it from the properties.

In February 2001, representatives of the Sanitary District and an engineer inspected for leaks on the properties. The inspection revealed a leak between 7 and 17 Alderson Street, and that leak was repaired on February 6, 2001. The repairs made to this leak did not prevent water from running down a second street onto plaintiffs' properties.

On April 20, 2001, Miller of the Sanitary District advised Mr. Nazelrod that the Sanitary District had repaired several leaks in the area and that he believed that the source of the water on the properties was a wet weather spring. At the time, plaintiffs were still encountering problems with water running through their properties. However, by May 2001, water had stopped running through plaintiffs' properties, and after May 7, 2001, the plaintiffs had no further contact with the Sanitary District regarding water running onto their properties.

According to plaintiffs, the running water caused losses to their businesses as a result of the inability of their customers to access the properties and the inability of their businesses to provide services to cus-

tomers. They also contend that the water caused property damage to the interior of their office buildings. In their amended complaint, plaintiffs seek $250,000 in compensatory damages, as well as other relief.

## IV

### *Summary Judgment Principles*

A defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that the defendant may be liable under the claims alleged. *See* F.R.Civ.P. 56(e). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett,* 477 U.S. at 322, 323, 106 S.Ct. 2548.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985), "when the moving party has

carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.'" *Barwick,* 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C. 1966), *aff'd,* 388 F.2d 987 (4th Cir.1967), *cert. denied,* 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by the plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Catrett,* 477 U.S. at 323–24, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett,* 477 U.S. at 323–24, 106 S.Ct. 2548).

Applying these principles to the facts of record here, this Court has concluded that defendant's motion for summary judgment must be granted. Since the facts of record

here "taken as a whole could not lead a rational trier of fact to find for the [plaintiffs], there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

V

*Discussion*

Plaintiffs are here seeking damages for injury to their business properties caused by water leaking from municipal water lines maintained by the Sanitary District.[5] They assert that the water leaks were caused by water lines which were in disrepair and which were under the care, custody and control of the Sanitary District. When evidence of record is viewed in the light favorable to the plaintiffs, it is apparent that the Nazelrods are essentially seeking a recovery in this case for the negligence of the Sanitary District and its employees in failing to properly maintain its water lines and in failing to repair leaks when asked to do so by the Nazelrods. Such tort claims may be brought in a state court.

Although the State of Maryland has clearly provided a means of redress for the assertion by injured parties of tort claims like those at issue here, plaintiffs have chosen to come to this Court. In Counts I, II and III, plaintiffs have attempted to shoehorn the pertinent facts into federal claims so that they may bring an action in this federal court. In so doing, plaintiffs have ignored Supreme Court authority holding that negligent interference with property interests does not amount to a constitutional deprivation. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). The Fourteenth Amendment is

---

**5.** A claim has also been asserted by Mrs. Nazelrod for personal injuries sustained by

her when she slipped on ice in the parking lot of the U–Haul property.

not a font of tort law to be superimposed upon whatever systems may already be administered by a state. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The due process clause was intended to secure an individual from the arbitrary exercise of the powers of government. *Daniels,* 474 U.S. at 331, 106 S.Ct. 662. As this Court has held, the doors of the federal courts should not be opened to civil rights lawsuits where there has been no affirmative abuse of power. *Donlan v. Smith,* 662 F.Supp. 352–357 (D.Md.1986). Facts of record here do not indicate that there has been any affirmative abuse of power by defendant Sanitary District which would permit plaintiffs to recover damages in this Court under § 1983.

(a)

### Count I—Inverse Condemnation/Temporary Taking

■ In Count I of the amended complaint, plaintiffs allege that the Sanitary District, through its failure to fix the water leaks properly and in a timely fashion, created an easement by inverse condemnation "by virtue of the Fifth and Fourteenth Amendments of the United States Constitution." Unlike Counts II and III, Count I does not refer to 42 U.S.C. § 1983. In their opposition to the pending motion, plaintiffs contend that the claim asserted by them in Count I has been brought under § 1983 and not directly under the Fifth and Fourteenth Amendments. On the record here, the Court will accept plaintiffs' assertion that they intended Count I to present a claim brought under § 1983 for the alleged wrongful taking of plaintiffs' property.

The Fifth Amendment to the United States Constitution provides in part: "nor shall private property be taken for public use without just compensation." U.S. Const. Amend. V. The Fourteenth Amendment applies this restriction to the states. *Naegele Outdoor Adver. v. Durham,* 844 F.2d 172, 174 (4th Cir.1988) (citing *Chicago, Burlington and Quincy R.R. Co. v. Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897)). "The determination that governmental action constitutes a taking is, in essence, a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest." *Agins v. Tiburon,* 447 U.S. 255, 260–61, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). Inverse condemnation is simply a "shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *United States v. Clarke,* 445 U.S. 253, 257, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980).

In order to prevail on an inverse condemnation claim, a plaintiff must prove, *inter alia,* that there was "an intent on the part of the defendant to take plaintiff's property or an intention to do an act the natural consequence of which was to take its property." *Columbia Basin Orchard v. United States,* 132 Ct.Cl. 445, 132 F.Supp. 707, 709 (1955). The property loss "must have been the direct, natural or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action." *Id.* "An accidental or negligent impairment of the value of property is not a taking, but, at most, a tort." *Id.* at 710.

In *Thune v. United States,* 41 Fed.Cl. 49 (1998), the Court of Federal Claims found that a taking did not occur when the plaintiff's property was accidentally destroyed by the U.S. Forest Service during a controlled burn. In *Thune,* the Forest Service attempted to burn several acres of sagebrush in order to "increase herbaceous forage production for elk." *Id.* at 50. Although the Forest Service had initially received a forecast showing favorable

weather conditions, wind conditions changed, thereby spreading the fire to the plaintiff's hunting camp and destroying it. The plaintiff claimed that the Forest Service's failure to maintain and control the fire constituted a taking of his property. *Id.* at 51, 52.

The Court dismissed the plaintiff's claim, holding that "negligent or improper implementation of an authorized project sounds in tort" and does not give rise to a taking. *Id.* at 52 (citing *Hayward v. United States*, 30 Ct.Cl. 219, 221 (1895); *In re Chicago, Milwaukee, St. Paul and Pac. R.R. Co.*, 799 F.2d 317, 326 (7th Cir.1986)). The Court explained that the plaintiff had not stated a takings claim because his allegations did not show that the government intended to take his property or do an act the natural consequence of which was to take his property. *Id.*

When the facts of record here are viewed in the light favorable to the plaintiffs, it is apparent that their inverse condemnation claim is based on negligent acts of employees of the Sanitary District. According to plaintiffs, it was the Sanitary District's failure to fix water leaks properly and in a timely fashion which caused the flooding of their properties, thereby allegedly creating an easement by inverse condemnation. As in *Thune*, facts of record here do not indicate that the Sanitary District intentionally took plaintiffs' property nor intentionally performed an act the natural consequence of which was to take plaintiffs' property. A claim for damages resulting from the government's negligence sounds in tort and does not give rise to a taking. *Id.* Accordingly, this Court concludes that plaintiffs' inverse condemnation claim asserted in Count I must fail.

In their opposition to defendant's motion for summary judgment, plaintiffs cite numerous Supreme Court cases involving takings by the federal government. In

each case, however, the government either intentionally took the plaintiff's property or intentionally performed an act the natural consequences of which was the taking of the plaintiffs' property. Plaintiffs have cited no case holding that damage to property caused by negligent governmental acts, like the improper maintenance and repair of water lines, constitute an unconstitutional governmental taking under the Fifth Amendment. Moreover, even if plaintiffs were able to prove that there has been an intentional taking of their property, there has been no showing, as required by the Fifth Amendment, that such taking was "for public use."

For these reasons, defendant's motion for summary judgment will be granted as to Count I of the amended complaint.

(b)
*Counts II and III—Procedural Due Process And Substantive Due Process*

■ In Count II of the amended complaint, plaintiffs allege under § 1983 that their right to procedural due process was violated by defendant Sanitary District. In Count III, plaintiffs also rely on § 1983 in alleging that their substantive due process rights have been infringed by defendant Sanitary District.

The Due Process Clause protects individuals against arbitrary action taken by the government. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Daniels*, 474 U.S. at 331, 106 S.Ct. 662. It is well established, however, that negligent acts of governmental officials cannot be relied upon as constituting the deprivation of either substantive or procedural due process. *Daniels*, 474 U.S. at 331–33, 106 S.Ct. 662; *Davidson*, 474 U.S. at 347–48, 106 S.Ct. 668.

As the Fourth Circuit held in *Yates v. Jamison*, 782 F.2d 1182, 1184 (4th Cir.

1986), a government official's unauthorized act, whether intentional or negligent, which causes the loss of private property is not a violation of procedural due process when the state provides a meaningful post-deprivation remedy. Where state law provides a means for a plaintiff to be made whole for his loss occasioned by the wrongful act, there has been no denial of procedural due process because the state action is not necessarily complete until the termination of the state's postdeprivation remedy. *Id.; see also Parratt v. Taylor*, 451 U.S. 527, 543, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

There can be little doubt that the State of Maryland provides a postdeprivation remedy for any loss sustained by the plaintiffs as a result of leaking municipal water pipes. Indeed, plaintiffs have recognized that Maryland tort law provides redress for the alleged wrongful acts of the Sanitary District. In Count IV, they seek a recovery for common law trespass while in Counts VI and VII, they seek recoveries for negligent inspection and negligent maintenance of the water lines which caused the damage. Rather than asserting these claims in an action filed in a state court, plaintiffs have chosen to include them in their amended complaint, contending that this federal Court has supplemental jurisdiction under 28 U.S.C. § 1367. This Court on the record here concludes that a postdeprivation remedy exists for the procedural due process claim asserted by plaintiffs in Count II of the amended complaint and that this claim must therefore fail.

▪ Nor do facts of record here indicate that plaintiffs have been denied substantive due process by the Sanitary District. Substantive due process is a constitutionally imposed limitation on government action which is intended to prevent the government from abusing power or employing it as an instrument of oppression. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827–28 (4th Cir.1995) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). The substantive component of the Due Process Clause protects an individual from malicious and intentional governmental action but does not permit a recovery for mere negligence. *Biser v. Town of Bel Air, Maryland*, 778 F.Supp. 249, 253 (D.Md.1991). Far from amounting to an abuse of power, allegations of a lack of due care suggest no more than a failure to measure up to the conduct of a reasonable person. *Id.* Bureaucratic bungling and a lack of coordination between branches of municipal government do not rise to the level of a substantive due process violation. *Id.*

When the facts of record here are viewed in the light favorable to the plaintiffs, it is apparent that their substantive due process claim is based on alleged negligent acts of employees of the Sanitary District. According to plaintiffs, the water leaks were caused by municipal water lines which were in disrepair and which were not properly maintained and repaired when the Sanitary District was asked to do so by the Nazelrods. Tortious conduct of this sort by municipal officials does not rise to the level of a constitutional tort. As the Supreme Court held in *Parratt*, federal courts should not be open to law suits where there has been no affirmative abuse of power. 451 U.S. at 548–549, 101 S.Ct. 1908. To hold that injuries of the sort caused here amount to a deprivation within the meaning of the Fourteenth Amendment "would trivialize" the century-old principle of due process of law. *Daniels*, 474 U.S. at 332, 106 S.Ct. 662.

For these reasons, the motion for summary judgment of defendant Sanitary Dis-

trict will also be granted as to Counts II and III of the amended complaint.

## VI

### *Plaintiffs' State Law Claims*

■ There remain plaintiffs' pendent state law claims asserted in Counts IV, VI and VII of the amended complaint.[6] Pendent jurisdiction is a doctrine of discretion and not one of a plaintiff's right. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, the Supreme Court has expressly cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal law claims are dismissed before trial ... the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. 1130. The principles of *Gibbs* have been codified under the name "supplemental jurisdiction." 28 U.S.C. § 1367.

Here, summary judgment in favor of defendant Sanitary District is being entered as to the only federal claims asserted in the amended complaint. A court may decline to exercise supplemental jurisdiction if all claims over which it has original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). A majority of the courts which have considered the question have declined to exercise pendent jurisdiction over state claims when the federal claims have been disposed of prior to a full trial on the merits. *See Hector v. Weglein,* 558 F.Supp. 194, 204–205 (D.Md.1982). Outlining the relevant factors to be considered in determining the appropriateness of a court's exercise of its discretion to decide pendent state claims, Judge Friendly in *Kavit v. A.L. Stamm & Co.,* 491 F.2d 1176, 1180 (2d Cir.1974) said the following:

If it appears that the federal claims ... could be disposed of on a motion..., the court should refrain from exercising pendent jurisdiction absent exceptional circumstances.

*Id.* at 1180.

Since summary judgment in favor of defendant Sanitary District is being granted as to all of plaintiffs' federal claims, and since there are no exceptional circumstances here, this Court will not exercise pendent jurisdiction in this case over Counts IV, VI and VII. Accordingly, these state law claims will be dismissed, without prejudice to plaintiffs' right to assert these claims in a state court.

## VII

### *Conclusion*

For all the reasons stated, the motion for summary judgment of defendant Sanitary District will be granted as to plaintiffs' federal claims, and plaintiffs' state law claims will be dismissed without prejudice. An appropriate Order will be entered by the Court.

---

**6.** As noted hereinabove, plaintiffs have withdrawn Count V.