Evelyn H. TEEGARDEN, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 95–452L.

United States Court of Federal Claims.

Nov. 10, 1998.

---

7. Each side's briefs shall be limited to 75 pages, with reply briefs limited to 30 pages.

forecloses jurisdiction in the Court of Federal Claims under 28 U.S.C. § 1500 (1994), and (2) whether plaintiffs can support a claim for inverse condemnation pursuant to the Takings Clause of the Fifth Amendment based upon the actions of the United States Forest Service in the course of fighting the Uinta Flat Fire. Argument is deemed unnecessary.

## FACTS

The following facts are undisputed, unless otherwise noted. In the afternoon of July 15, 1989, a forest fire drawing national attention erupted in Utah in the area of Uinta Flat. Extreme conditions caused the fire to expand quickly, posing an immediate threat to both persons and property. Because of its formidable size, the fire required the expertise and resources of the United States Forest Service to assemble and coordinate a Type 1 National Fire Management Team.[1]

In the span of a few hours, the "Uinta Flat Fire" consumed over 1,000 acres, moving in a northeasterly direction from its point of origin. Initial efforts to suppress the fire were unsuccessful, due, in part, to the lack of adequate resources, including manpower and equipment. Control and suppression difficulties were further exacerbated by the onset of darkness, and because the fire would jump unburned ground, or "spot," and restart at distances of up to a quarter mile.

Because firefighters were not equipped to work safely in darkness, fire suppression efforts ceased the evening of July 15, to recommence the following day. In the early morning of July 16, an assembled Type I management team received, by letter dated July 16, 1989, the requisite delegation of authority from the appropriate Forest Service Forest Supervisor to take those actions necessary to suppress the fire. The letter also set forth the following general objectives and priorities:

J. William Bennett, Portland, OR, for plaintiffs.

Dorothy R. Burakreis, Washington, DC, with whom was Assistant Attorney General Lois G. Shiffer, for defendant.

### ORDER

MILLER, Judge.

This case is before the court on defendant's motion to dismiss for failure to state a claim and for lack of jurisdiction, or in the alternative, for summary judgment. The issues under consideration are (1) whether a tort claim based on the same operative facts subsequently filed in federal district court

---

1. The policies and objectives of the Forest Service related to fire suppression are contained in the Forest Service Manual. This manual requires the Forest Service to maintain a management team qualified for interregional and interagency fire assignment. Teams are classified as either Type I, II, III, or IV. A Type I team is equipped with the leadership, training, experience, and resources to fight the most dangerous and complex fires. The Uinta Flat Fire required the response of a Type I team.

1. Fuels are flashy. The fire has been spotting and moving fast. Firefighter safety is your first priority.

2. Your second priority is the protection of life and property. Mammoth Creek is a significant summer home area, and the spread of the fire there must be prevented. Structural protection may be required.

3. The fire is in an area of high commercial timber values. Third priority is to keep burned acreage to a minimum.

Summer home developments were located within three to four miles to the west and north of the fire. Certain lands to the north also contained high-value timber with high-resource values. Private lands, including that of Evelyn H. Teegarden, Noel Eugene Teegarden, and Ira William Hatch ("plaintiffs"), were situated five to six miles to the east; there was an absence of high-value timber in this direction.

Over the course of the night of July 15 and through the early morning hours of July 16, the fire had consumed approximately 2,500 acres of land and had crossed over to the West Fork of Asay Creek, where plaintiffs' land was located. Winds continued to push the fire in a northeasterly direction. The accepted strategy of the Forest Service was to "anchor" the suppression efforts at the base of the fire in the southwest corner, *i.e.*, its starting point, in order to keep the fire from spreading laterally. Approaching from the base is recognized as a fundamental technique of wildland fire suppression and also as a means of securing firefighter safety.

Plaintiffs contacted the Forest Service midday on July 16, concerned with the fire's proximity to their land. Forest Service officials informed plaintiffs that, at that time, fire suppression efforts were required and remained concentrated in areas of higher priority. On the following morning, July 17, a Forest Service tractor cleared brush from plaintiffs' property, thereby creating a perimeter sufficient to protect plaintiffs' cabin, corral, and other improvements. By the evening of July 18, the fire was considered to be under control, having burned approximately 7,836 acres, 612 of which belonged to plaintiffs. The fire was declared contained on July 19.

Plaintiffs first filed an administrative claim for damages with the Forest Service under the Federal Tort Claims Act, ch. 753, 60 Stat. 812, 842 (1946) (codified in scattered sections of 28 U.S.C.) (the "FTCA"), seeking $11,673,-642.00 in property damages for the alleged destruction of timber and environmental resources on their property. After the denial of their administrative claim, plaintiffs on July 12, 1995, filed a claim for inverse condemnation in the Court of Federal Claims alleging damages in the amount of $563,-055.00 for the loss of timber and other environmental resources. On or about December 4, 1995, plaintiffs commenced a suit in Utah federal district court, under the FTCA, claiming over $11 million damages to their property resulting from the Forest Service's negligence. On January 9, 1998, the district court, in a bench ruling, granted the Government's motion to dismiss for lack of subject matter jurisdiction on the ground that the Forest Service's actions fell within the FTCA's "discretionary function" exception. *See* 28 U.S.C. § 2680(a) (1994).

## DISCUSSION

### 1. *Jurisdiction*

In ruling on a motion to dismiss, this court is generally "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). However, plaintiff as the non-moving party, bears the burden of establishing jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988).

■ Before assessing whether the substantive foundation underlying plaintiff's taking claim can withstand the weight of defendant's motion, the court must determine whether plaintiff's claim should be dismissed pursuant to 28 U.S.C. § 1500 (1994), which states:

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plain-

tiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Relying on the Federal Circuit's decision in *UNR Industries, Inc. v. United States,* 962 F.2d 1013 (Fed.Cir.1992), *aff'd sub nom. Keene Corp. v. United States,* 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993), defendant asserts that section 1500 divested the Court of Federal Claims of its jurisdiction over the instant case upon plaintiff's filing of suit in federal district court in Utah. Plaintiff counters that decisions of the Supreme Court and Federal Circuit subsequent to *UNR* establish that a later-filed district court action does not deprive the Court of Federal Claims of jurisdiction over a claim arising from the same operative facts. *See Keene Corp.,* 508 U.S. at 209 n. 4, 113 S.Ct. 2035, *Hardwick Brothers Co. II v. United States,* 72 F.3d 883, 886 (Fed.Cir.1995); *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1548–49 (Fed.Cir.1994); *Tecon Eng'rs, Inc. v. United States,* 170 Ct.Cl. 389, 399, 343 F.2d 943, 949 (1965).

In order to remedy a statute "rife with judicially created exceptions and rationalizations to the point that it no longer serves its purposes," *UNR Industries,* 962 F.2d at 1021,[2] the Federal Circuit established, *inter alia,* that "if the same claim is filed in another court after the complaint is filed in the Claims Court, the Claims Court is by that action divested of jurisdiction." *Id.* This holding necessarily overruled the earlier decision of the Court of Claims in *Tecon Engineers,* which determined that a complaint filed after a petition is filed in the Court of Claims did not defeat jurisdiction. Although the Supreme Court affirmed the decision in *UNR Industries,* certain case law was not disturbed:

> We do not decide whether [section 1500] also continues to bar a plaintiff from prosecuting a claim in the Court of Federal Claims while he has pending a later-filed suit in another court "for or in respect to" the same claim. As the dissenting judge noted [in *UNR Industries,*] this case does not raise that issue.

*Keene,* 508 U.S. at 209 n. 4, 113 S.Ct. 2035 (citations omitted). The Court underscored its position in stating that "[i]n applying § 1500 to the facts of this case, we find it unnecessary to consider, much less repudiate, the 'judicially created exceptions' to § 1500 found in *Tecon Engineers* ...." *Id.* at 216, 113 S.Ct. 2035.

Subsequent decisions of the Federal Circuit have construed the foregoing language in *Keene* as a tacit indication to resurrect the rule of *Tecon Engineers.* In *Loveladies Harbor,* Judge Plager, writing for the majority of the Federal Circuit sitting en banc, recalled that "[a]s the Supreme Court has reminded us, anything we said in *UNR* regarding the legal import of ... [*Tecon Engineers*] was mere dictum, and therefore we will not accord it stare decisis effect." 27 F.3d at 1549. The following year, Judge Plager removed any remaining doubt as to the appeals court's view: "After *UNR/Keene* and *Loveladies I,* *Tecon Engineers* remains good law and binding on this court." *Hardwick Brothers,* 72 F.3d at 886. Guided by *Hardwick Brothers,* the court holds that plaintiff's subsequent filing in federal district court will not divest the Court of Federal Claims of jurisdiction over the instant claim.[3]

---

**2.** The court did not leave the statute's purpose undefined, to wit, "to force an election of forum and to prevent simultaneous dual litigation against the government." *UNR Indus.,* 962 F.2d at 1021.

**3.** A claim is defined not by the underlying theory of recovery, but by the operative facts from which it arises. *See Keene Corp. v. United States,* 508 U.S. 200, 212, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *cf. Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1551 (1994) ("For the

Court of Federal claims to be precluded from hearing a claim under § 1500, the claim ... must arise from the same operative facts, and must seek the same relief.") The court is not persuaded by plaintiff's assertion that the later-filed district court claim arises from a different set of operative facts than does the claim filed in this court. Both claims relate to the conduct and decisions of government actors in the course of fighting the Uinta Flat Fire; however, despite defendant's assertion to the contrary, plaintiffs' claim should not be dismissed merely because

## 2. *Taking claim*

Because the court considers matters beyond the pleadings in order to resolve defendant's motion, it will be treated as a motion for summary judgment. When reviewing a motion for summary judgment in a case asserting an unconstitutional taking, a court should avoid "precipitous grants of summary judgment" due to the "fact-intensive" nature of such claims. *Yuba Goldfields, Inc. v. United States*, 723 F.2d 884, 887 (Fed.Cir. 1983); *see also Whitney Benefits, Inc. v. United States*, 752 F.2d 1554, 1559–60 (Fed. Cir.1985); *Skaw v. United States*, 740 F.2d 932, 939 (Fed.Cir.1984). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c). Only disputes over material facts, or facts that might significantly affect the outcome of the suit under the governing law, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence would permit a reasonable jury to return a verdict in favor of the non-movant. *See id.* at 248–49, 106 S.Ct. 2505. Any evidence presented by the nonmovant is to be believed and all justifiable inferences are to be drawn in its favor. *See id.* at 255, 106 S.Ct. 2505. Summary judgment pursuant to RCFC 56 properly can intercede and prevent trial if the movant can demonstrate that trial would be useless in that more evidence than is already available in connection with its motion could not reasonably be expected to change the result. *See Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626 (Fed.Cir. 1984).

■ The takings clause of the Fifth Amendment states that private property shall not be taken for public use without just compensation. In order to prevail, a claimant must demonstrate: (1) that there was an intent on the part of the Government to take the owner's property, (2) that the taking was authorized, and (3) that the taking was the direct, natural, and probable consequence of the Government's action. *See Columbia Basin Orchard v. United States*, 132 Ct.Cl. 445, 450, 132 F.Supp. 707, 709 (1955). An accidental or negligent impairment of the value of private property is not a taking, but, at most, a tort. *See id.*

■ The lynchpin of plaintiffs' claim rests on their allegations that the Forest Service "deliberately and intentionally concentrated fire suppression manpower and equipment on the Mammoth Creek portions of the fire line, to the detriment and loss of the fire control in the vicinity of the West Fork Asay Creek," and that, "[a]s a direct, probable and foreseeable consequence of [this decision], the Uinta Flats Fire spread out of control into the West Fork of Asay Creek ... and burned over private land belonging to plaintiff's...." Compl. filed July 12, 1995, ¶¶ 8–9. Thus, it is critical to determine whether plaintiffs' cause of action resembles a "tortious invasion of their property rights, or 'rises to the magnitude of an appropriation of some interest in [their] property permanently to the use of the Government.'" *Baird v. United States*, 5 Cl.Ct. 324, 329 (1984) (quoting *National By-Prods., Inc. v. United States*, 186 Ct.Cl. 546, 577, 405 F.2d 1256, 1273–74 (1969)). The undisputed facts confirm that the actions of the Forest Service were authorized, including the decision to prioritize lands containing summer home development and high-value timber stands over plaintiff's land. Plaintiffs construe this decision and the attendant concentration of fire suppression efforts in areas of high priority as tantamount to a taking of their property by the Forest Service.

Although little doubt exists that the execution of the fire suppression plan according to established priorities was an exercise of proper authority by government officials, plaintiffs have not identified any decision or action by the Forest Service indicating an intent to take plaintiff's property. Confronted with a wildfire of immense threat to human life, dwellings, high-value timber, and unimproved lands, as well as limited man-

---

both claims arise from the same operative facts. *See Hardwick Brothers*, 72 F.3d at 884 (holding that Court of Federal Claims retained jurisdiction despite later-filed action involving same claim as defined for purposes of section 1500).

power and equipment, the Forest Service elected to preserve higher-value lands before attending to those of lesser value. Plaintiffs cannot impute to the Forest Service the intention to take land that it was unable to protect simply because the extent of the threat, aggravated by limited government resources, necessitated prioritization.[4] Indeed, the intent of the Government with respect to the preservation of plaintiffs' land conflicts with plaintiffs' allegations. The third fire suppression objective identified in the document delegating authority to the Type I team was "to keep burned acreage to a minimum." This cannot be reconciled with plaintiffs' contention that the Forest Service intentionally sacrificed plaintiffs' unimproved land to protect land of higher value.

 The element of causation poses an even greater obstacle for plaintiffs to overcome. Although plaintiffs assert that the concentration of fire suppression manpower and equipment in areas of high priority manifested "an intent on the part of the defendant to do an act the natural consequence of which

was to take [plaintiffs'] property," Plfs' Br. filed Sept. 4, 1998, at 18, plaintiffs cannot escape the incontrovertible fact that the Uinta Flat Fire, not the Forest Service, caused the destruction of plaintiffs' property.[5] In the context of a claim for inverse condemnation, damages resulting from " 'a random event induced more by an extraordinary natural phenomenon than by Government interference' " cannot rise to the level of a compensable taking, "even if there is permanent damage to property partially attributable to Government activity." *Berenholz v. United States*, 1 Cl.Ct. 620, 626 (1982) (quoting *Wilfong v. United States*, 202 Ct.Cl. 616, 622, 480 F.2d 1326, 1329 (1973)).

Plaintiffs' earlier proceeding in Utah established that, based on the discretionary function exception to the FTCA, the actions of the Forest Service did not constitute a sufficiently intervening and superseding cause that could justify the imposition of liability upon the Government. Although not binding on this court, the findings of the district court are persuasive and reasonable. Plaintiffs cannot simply recycle[6] a defeated

---

4. Plaintiffs fail to appreciate the significant distinctions between the government action of instant case and government action typical of inverse condemnation claims in which compensation is awarded. First, plaintiffs cannot identify any action of the Forest Service that directly, indirectly, or incidentally imposed upon the integrity or value of plaintiffs' land; rather, plaintiffs point out that the Forest Service failed to act, insofar as there was a failure to protect plaintiffs' land from the destructive forces of the fire. Despite the novelty of this theory, plaintiffs do not cite any cases in which compensation has been awarded under the Fifth Amendment for an omission or failure to act on the part of the Government. It also bears noting that claims involving an omission or failure to act sound in tort and, therefore, necessarily fall beyond the jurisdiction of the Court of Federal Claims. *See* 28 U.S.C.A. § 1491(a)(1) (West 1994 & Supp. 1998); *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967).

Second, it is difficult to ascertain the property allegedly taken from plaintiffs, or, stated differently, what it is exactly that the Government allegedly took. In the case at bar, the Government neither diminished the value of plaintiffs' land through enactment of a regulation or denial of a permit, nor constructed a dam, bridge, highway, airport, or other structure detrimentally infringing on plaintiffs' property rights. The Forest Service did not physically appropriate any property of plaintiffs to protect government or

privately held lands assessed at a higher value. The Forest Service merely exercised its discretion and judgment in an attempt to secure and maintain the status quo, taking nothing.

5. The facts underlying *Thune v. United States*, 41 Fed.Cl. 49 (1998), resemble those of the instant case. In *Thune* a controlled burn, set by the Forest Service, spread beyond its intended area out of control, destroying plaintiff's hunting camp. Judge Merow's decision granting defendant's motion to dismiss for lack of subject matter jurisdiction reasoned that the destruction of plaintiff's camp "was not a direct, natural and probable consequence of the project functioning as designed. Instead, the damage resulted from intervening government impropriety or unanticipated natural events...." *Id.* at 54. In the instant case, no facts suggest that the Forest Service had anything to do with the outbreak of the fire; moreover, the Forest Service was not merely attempting to control the fire, as in *Thune*, but, rather, trying to extinguish it in its entirety.

6. Paragraph 11 of plaintiffs' complaint filed in federal district court stated, as follows:

11. As a direct, proximate, and foreseeable consequence of the negligence of Forest Service officials in their fire suppression action, the Uinta Flats Fire spread out of control into the West Fork of Asay Creek during the later part of the day on July 16, 1989, and burned

claim, camouflaged by a different legal theory filed in a different court, for the purpose of relitigating the propriety of the Forest Service's tactical decisions and fire suppression actions.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion for summary judgment is granted. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

over private land belonging to plaintiffs on the Asay Creek Ranch, consuming about 250 acres of timber and ground cover on the north side of West Fork Asay Creek, about 285 acres of timber and ground cover on the south side of West Fork Asay Creek, and about 95 acres of timber and ground cover on the north slope above the cabin on the Asay Creek Ranch.

The gravamen of plaintiffs' complaint in the instant action is contained in ¶ 9. Paragraph 9 differs from ¶ 11 of the district court complaint only insofar as plaintiffs substituted "concentration of fire suppression manpower and equipment on the Mammoth Creek portions of the fire line," for "the negligence of Forest Service officials in their fire suppression action."